## BOYLE v. DINSDALE et al.

No. 2625.   Decided August 20, 1914 (143 Pac. 136).

1. BANKS AND BANKING—DEPOSITS—TITLE OF DEPOSITOR—EVIDENCE
   —WEIGHT AND SUFFICIENCY. In an action involving the title to
   money deposited in a bank and entered in the depositor's
   passbook as "payable to P. or D. (children of the depositor),
   an equal amount to each," but entered in the bank's ledger
   as "payable to self or P. or D., an equal amount to each,"
   evidence *held* sufficient to show that it was the depositor's
   intention that she should have the right to draw the interest
   for her own use during her life if she so desired, and that the
   principal sum should go to the two children. (Page 115.)

2. GIFTS—DEPOSITS IN BANKS. An owner of a bank deposit when
   making an additional deposit informed the assistant cashier
   that she wanted the deposit arranged so that in case she died,
   her two children P. and D. could get the money, but so that
   she could draw the interest. The money was thereupon placed
   in an account by itself, and entered in the depositor's pass-
   book as "payable to P. or D., an equal amount to each," but
   in the bank's ledger as "payable to self or P. or D., an equal
   amount to each." *Held*, that there was a gift of the money
   to the two children and a delivery thereof to the bank as
   trustee to be held by it for their use and benefit during the
   life of the depositor, with the right on her part to have the
   use and benefit of the accruing interest.[1]   (Page 118.)

3. GIFTS—DEPOSITS IN BANKS. The entry of the deposit on the
   bank's ledger as payable to the depositor or to the two children
   did not affect the validity of the gift, as a trust in personalty
   need not be in writing or in any particular form. (Page 118.)

4. WILLS—GIFT DISTINGUISHED—DEPOSIT IN BANKS. The gift was
   not invalid on the ground that it was a testamentary disposi-
   tion. (Page 118.)

5. GIFTS—DEPOSITS IN BANKS. That the depositor's passbook was
   in her possession at the time of her death did not prevent the
   gift from taking effect, since there was an actual delivery of
   the money to the bank as trustee, and a symbolical delivery
   by delivery of the passbook was unnecessary. (Page 118.)

[1] Distinguishing *Holman* y. *Savings Bank*, 41 Utah 340; 124
Pac. 765,

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by John A. Boyle, administrator of Jane N. Pierce, deceased, Caroline P. Dinsdale, George T. Pierce and another. Judgment for defendants named. Plaintiff appeals.

AFFIRMED.

*Joseph ·Chez* for appellant.

*Halverson & Pratt* for respondents.

### APPELLANT'S POINTS.

"To constitute a valid gift *inter vivos,* it must take effect at once, and pass entirely beyond the control of the donor." *Snyder* v. *Snyder,* 92 N. W. (Mich.) 353; *In re Soulard's Estate,* 43 S. W. (Mo.) 617; *Harris Banking Co.* v. *Miller,* 89 S. W. (Mo.) 629; *Gallagher* v. *Donahy,* 69 Pac. (Kan.) 330; *Bickford* v. *Mattocks,* 50 Atl. (Me.) 894; *Duncombe* v. *Richards,* ·9 N. W. (Mich.) 149; *Meyers* v. *Albert et al.,* 135 Pac. (Wash.) 1003; *Jennings* v. *Nevill,* 54 N. E. (Ill.) 202; *Taylor* v. *Harmison,* 53 N. W. 584; *Furenes* v. *Eide,* 80 N. W. 539; *Zeller* v. *Jordan,* 105 Cal. 143. To constitute a valid gift of a deposit in a savings bank made in the joint names of the donor and the donee, the evidence must show that the donor has absolutely divested herself of control over the deposit. *Taylor* v. *Coriell,* 57 Atl. (N. J.) 810; *Taylor* v. *Henry,* 30 Am. Rep. 486; *DePuy* v. *Stevens,* 55 N. Y. Supp. 810. The death of the principal destroys the agency. *Frink* v. *Roe,* 11 Pac. (Cal.) 820; *In re Kilborn,* 89 Pac. (Cal.) 161; *Maxwell* v. *Harper,* 98 Pac. (Wash.) 756.

### RESPONDENTS' POINTS.

"According to some cases where money is deposited by one in trust for another, if the beneficiary is ignorant of the trust, he has no claim on the deposit after the trustee's death; but by another view the beneficiary can claim it even though he did not know of the trust in the trustee's lifetime. When

the beneficiary knows of the deposit, especially by the trustee's express announcement, he is entitled thereto." 5 Cyc. 609-610; *Smith* v. *Savings Bank*, 64 N. H. 228; 10 Am. St. 400; *Gerrish* v. *New Bedford Savings Institution*, 128 Mass. 159; 35 Am. Rep. 365; *Martin* v. *Funk*, 75 N. Y. 134; 31 Am. Rep. 446; *Ray* v. *Simmons*, 11 R. I. 266; 24 Am. Rep. 447; *Gardner* v. *Merritt*, 32 Md. 78; 3 Am. Rep. 115; *Minor* v. *Rogers*, 40 Conn. 512; 16 Am. Rep. 69; *Davis* v. *Ney*, 125 Mass. 272; 28 Am. Rep. 272; *Sheedy* v. *Roach*, 124 Mass. 474; 26 Am. Rep. 680; *Hill* v. *Stevenson*, 63 Me. 364; 18 Am. Rep. 23; *Ray* v. *Simmons*, 11 R. I. 266; 23 Am. Rep. 447; *Alger* v. *Savings Banks*, 146 Mass. 418; 4 Am. St. 331; *Cunningham* v. *Davenport*, 147 N. Y. 43; 49 Am. St. 641; *Curtis* v. *Portland Savings Bank*, 77 Me. 151; 51 Am. Rep. 750; *Williamson* v. *Yeager*, 91 Ky. 282; 34 Am. St. 148.

"But no particular form of words is required to create a trust in another, or to make the party himself a trustee for the benefit of another. It is enough for the latter purpose if it be unequivocally declared in writing, or orally, if the property be personal, that it is held in trust for the person named." *Ex parte Pye*, 18 Ves. 140; *Wheatley* v. *Purr*, 1 Keen 551; *McFadden* v. *Jenkyns*, 1 Hare 458, and 1 Phillips 153; *Melroy* v. *Lord*, 4 De G., F. & J. 264. "When the trust is thus created it is effectual to transfer the beneficial interest, and operates as a gift perfected by delivery." *Gerrish* v. *New Bedford Savings Bank*, 35 Am. Rep. 367.

FRICK, J.

The appellant as administrator of the estate of Jane N. Pierce, deceased, late of Weber County, Utah, brought this action to recover a certain deposit of money which it is alleged was made by the deceased in her lifetime in the Pingree National Bank of Ogden, and in which money it is alleged the respondents Geo. T. Pierce and Caroline P. Dinsdale claimed some right or interest. The respondent bank answered the complaint, admitting that certain moneys had been deposited in the bank by the deceased, but disclaiming all interest in or right to said money or any part of it except as a depositary. The two respondents, Pierce and Dinsdale,

filed an answer and cross-complaint. In their answer they denied appellant's right to the money and in their cross-complaint they alleged that the money belonged to them as a gift from their mother, the deceased, and demanded judgment for the same.

There is not much dispute respecting the facts which, in our judgment, must control with respect to what the result should be. The difficulty, if there be one, arises as one of law rather than one of fact.

The facts, in brief, are:

That Jane N. Pierce died intestate on the 4th day of February, 1909, leaving surviving her eight children, ranging in ages from 52, the oldest, to 29, the youngest, among whom were the respondents Geo. T. Pierce and Caroline P. Dinsdale; that on the 11th day of December, 1906, the deceased, then having on deposit a certain sum of money in the respondent bank in her own name, she and the two respondents, at her request, went to the bank where she expressed a desire to make a further deposit; that before making the deposit she spoke to the assistant cashier of the bank and informed him that she wanted to arrange the deposit she had in the bank and the additional money she then desired to deposit so that in case she died, or anything happened to her, as she put it, her son Geo. T. Pierce and her daughter Caroline P. Dinsdale could get the money, "that they were to have the money, and she wanted it so that she could have the interest," and she asked the assistant cashier whether there would be any trouble about arranging the matter in that way; that he informed her that there might be trouble if she had other heirs; that she then said to him the other heirs are satisfied, and that some of the other banks could arrange it as she wanted it; that the assistant cashier then informed her that he could do it if other banks could; that thereupon she made an additional deposit of $581, which sum, together with the amount she then had in the bank, was placed in an account by itself and the assistant cashier gave her a passbook in which he entered the deposit by evidencing the transaction thus: "Payable to George T. Pierce or Caroline P. Dinsdale, an equal amount to each."

In the bank ledger, however, the assistant cashier had made the entry read thus: "Payable to self or George T. Pierce or Caroline P. Dinsdale, an equal amount to each." The assistant cashier testified, however, that what the deceased wanted and desired him to do was that the deposit be so made that she could draw the accruing interest only during her life, that the principal sum should be left in the bank and be divided between or paid to Geo. T. Pierce and Caroline P. Dinsdale, each to have one-half, and that the only reason that he wrote the word "self" in the bank book was for the purpose of permitting the deceased to draw the interest. He admitted that it was the express wish or intention of the deceased that she should have the right to draw the interest, and that the principal should go to the two children, share and share alike, and that in making the entries in the books as was done he supposed he had accomplished what was wanted. The whole deposit made by the deceased in the account aforesaid amounted to $952.27, which, with interest, at the time the action was brought, amounted to $1,094.52. There is other evidence which shows what the intentions of the deceased were respecting the money on deposit. For instance, a few days before the deposit was made, the deceased, in referring to her affairs, told another daughter, a Mrs. Faulkner, that:

" 'I am not going to be with you long,' she said, 'and I am quite worried because I have some money; I have been making some deposits at the bank. I want to have enough so that George and Carrie will have their share,' she said. 'All the rest have had their share but those two, and,' she says, 'I want those two to have their share.' She said, 'George's wife, Mary Pierce, has been good to me and so has Carrie, and I want to satisfy all my children.' She says, 'The first fine day I can go I want to go to town and fix this money up.' She said, 'It is in the bank; I want to go and fix it up to George and Carrie.' "

This same daughter saw the deceased again a few days after the deposit was made, when the latter again spoke about the matter. The witness testified:

"My mother said 'I rest easier now. * * * I have

that money fixed over to George and Carrie (meaning the two respondents).' ''

The witness further testified:

''She said that she had it fixed so that she could use the interest if she needed it, but she wouldn't in any wise touch the principal.''

There is further evidence that the deceased, after the deposit was made, regarded the money as that of the two respondents. · It appears that another son of hers, after the deposit was made, wanted to borrow the money. Mrs. Faulkner, with respect to that matter, testified that the deceased asked her ''if I would take her down to Caroline Dinsdale's to ask her if my brother Porter M. Pierce could borrow this money. * * * Next morning I took her down and she asked my sister, Mrs. Dinsdale, 'Are you willing to lend Porter the money?' and Mrs. Dinsdale turned to her husband and she said, 'Shall we lend the money?' and he said, 'Leave it where it is.' '' After the witness and the deceased left the Dinsdales', the witness said that her mother, in referring to the answer made by Mr. Dinsdale, said:

''That is just the answer I wanted because * * * I would rather the money would remain in the bank, because they are sure of it there.''

It was also shown that the deceased, thereafter, to-wit, in 1907, opened another account, and deposited in her own name the sum of $277. In addition to that she also had other money with her when she died. · She drew the interest on the deposit of $952.27 up to December 9, 1908. Respecting that deposit and the other money she had she also told Mrs. Faulkner:

''I want enough in that one account book that I have signed to George Pierce and Caroline Dinsdale so that they will receive about $500 apiece, and the rest I am storing in another account to pay my funeral expenses. I don't want to be a burden upon my children.''

It also was made to appear that immediately after the deposit was made the pass book was in the possession of Geo. T. Pierce, but at the time of the mother's death it was found in her apartments. There are other facts and circumstances

in evidence which are indicative of the deceased's intentions respecting the deposit in question, but we deem the foregoing sufficient to show that her manifest purpose and intention were that she should have the right to draw the interest for her own use and benefit during her life if she desired to do so, and that the principal sum should go to the two respondents.

A trial to the court resulted in findings and judgment in favor of respondents Geo. T. Pierce and Caroline P. Dinsdale, by which each one was awarded one-half of the deposit in question. The administrator appeals.

The findings are assailed as not being supported by the evidence. There is nothing in that contention. In our judgment the question is one purely of law. There is —there can be—no doubt in the mind of any dis-  **2, 3, 4, 5** interested person who may read this record what the intentions of the deceased were respecting the deposit in question. The fact that she intended the deposit should be divided equally between the two respondents by the bank, and that she should be permitted to draw the accruing interest during her lifetime if she needed it or wanted it is as clearly established as any physical fact well could be. In making the deposit in the manner that she did the deceased clearly intended to make a gift of the principal sum in equal parts to the respondents, she retaining the right to the interest for her own use and benefit. The only question, therefore, is whether in law what was done constituted a completed and enforceable gift. Appellant contends that the question has been determined in his favor by this court in the case of *Holman* v. *Savings Bank*, 41 Utah 340; 124 Pac. 765, where we held that where a deposit was made payable to either one of two persons under the facts there disclosed the transaction did not constitute a gift *inter vivos*. We there defined the essential elements constituting a gift *inter vivos*. Under the undisputed facts in that case the question of whether it was the intention of the alleged donor in making the deposit in the form and manner it was made to make a gift, or whether the deposit was made in that form for her convenience merely, was left in serious doubt, to say the

least.   The trial court, in that case, found that, under the
facts, no gift was intended, and entered judgment accord-
ingly, and we affirmed the judgment.   That case, for the
reasons hereafter appearing, is not controlling here.   If the
deceased had divided the money into two equal parts and
had deposited one part in the name of her son George and
the other in the name of her daughter Caroline and had
in writing directed the bank to pay the money to each of
them at her death, and had formally appointed the bank as
trustee for that purpose, no lawyer would seriously contend
that the transaction did not constitute a gift *inter vivos,* and
that the two children could not successfully maintain an ac-
toin for the money, although the deceased had also impressed
it with a trust in her favor to the extent that she could draw
the accruing interest during her lifetime, and thereby had
withheld the full possession and enjoyment of the money
from them until after her death.   If the deceased had placed
the money with some individual person with the declaration
that she gave it to such person in trust for her children, and
that at her death he should deliver it to them share and share
alike, but that during her life he should pay to her the
accruing interest, no one could doubt that the gift was com-
plete.   Nor was it necessary to evidence the transaction or
trust in writing, since all that was involved was personal
property.   The cases are numerous where similar transac-
tions have been enforced by the courts, as will appear from
the following well-considered cases.   In those cases it is held
that, where gifts were made under circumstances similar to
those in the case at bar, making the 'deposit with the bank
constituted such bank a trustee and depositing the money
with it was a sufficient delivery of the subject-matter of the
gift so as to make the transaction in law a completed and
irrevocable gift *inter vivos.*   See *Smith* v. *Savings Bank,* 64
N. H. 228; 9 Atl. 792; 10 Am. St. Rep. 400; *Martin* v. *Funk,*
75 N. Y. 134; 31 Am. Rep. 446; *Minor* v. *Rogers,* 40 Conn.
512; 16 Am. Rep. 69; *Ray* v. *Simmons,* 11 R. I. 266; 24 Am.
Rep. 447; *Gerrish* v. *New Bedford S. I.,* 128 Mass. 159; 35
Am. Rep. 365; *Drinkhouse* v. *German S. & L. Soc.,* 17 Cal.
App. 162; 118 Pac. 953; *Gardner* v. *Merritt,* 32 Md. 78; 3

Am. Rep. 115. Indeed, it is held by some of the courts that where money is deposited in a bank by one in trust for another the beneficiary may claim the deposit although he was ignorant of the fact that it was made until after the death of the donor. It is, however, generally held that "when the beneficiary knows of the deposit, especially by the trustee's (donor's) express announcement, he is entitled thereto." 5 Cyc. 609, 610. The law upon the subject is tersely, and, as we conceive, correctly stated by the editor in the headnote to Smith v. Savings Bank, 64 N. H. 228; 9 Atl. 792; 10 Am. St. Rep. 400, in the following words:

"Deposit of money in a bank by a father in the name of his daughter, with the intention that such deposit shall take effect as a gift to her, subject to his right to the income while he lived, and to his wife's right of taking such income for her life, if she survived him, is a valid gift of such moneys to the daughter if she, upon being informed of the deposit and its purpose, assents thereto, although the father retains the deposit book during his life to enable him to draw the income."

Nor is it necessary to declare the trust or to appoint the trustee in any particular set or form of words. In Gerrish v. New Bedford S. I., supra, it is held that for the purpose of making a person or a bank a trustee for the benefit of a donee it is sufficient "if it be unequivocally declared in writing, or orally if the property be personal, that it is held in trust for the person named." In the case of Martin v. Funk, 75 N. Y., at page 138; 31 Am. Rep., at page 448, Mr. Chief Justice Church quotes and adopts the language of Lord Chief Justice Turner, who, in passing upon a similar question, said:

"I take the law of this court to be well settled that, in order to render a voluntary settlement valid and effectual, the settler must have done everything which according to the nature of the property comprised in the settlement was necessary to be done in order to transfer the property, and render the settlement binding upon him. He may of course do this by actually transferring the property to the persons for whom he intended to provide, and the provision will then be effectual, and it will be equally effectual if he transfer the property to a trustee for the purpose of the settlement, or declare that he himself holds it in trust for those purposes, and if the property be personal, the trust may, I apprehend, be declared either in writing or by parol."

It is, we think, generally conceded that the English courts,. from which the foregoing quotation is taken, are more strict in requiring a *donee* to comply with the forms of law than are the courts of this country.   But even though we should follow the strict rule of the English courts, which we are not inclined to do, yet the gift in the case at bar comes strictly within the requirements outlined in the foregoing quotation from Lord Chief Justice Turner.  What more could the deceased have done in appointing a trustee and in placing the subject-matter of the trust, the deposit in question, in his care and under his control than she did?   Did she not by what she said and did, divest herself of all dominion or control over the deposit?   The mere fact that the assistant cashier made an entry in a bank book that the money was payable to ''self'' or to the two children certainly could not destroy the purpose and intention of the deceased to make the gift; nor could it prevent it from becoming effectual. What the assistant cashier did was, at most, evidence of the transaction, and he very frankly conceded that the deceased wished the deposit so made that the principal sum should be paid to the two children in equal parts, while she wanted to retain the right to draw the accruing interest only.   If the assistant cashier imperfectly evidenced the transaction, it cannot affect the gift so long as the law did not require the transaction to be evidenced in writing and in a particular form.   It no doubt was proper to show the real transaction by parol, notwithstanding the entries in the bank book.   But if we look to the entry in the passbook which was made at the time the deposit was made, it seems to us it clearly shows that the deposit was intended as a gift to the two children.   The money was made payable to Geo. T. Pierce and Caroline P. Dinsdale and to no one else.   True, in the bank book kept by the bank the assistant cashier also wrote the word ''self,'' meaning the deceased.   He concedes, however, that this was inserted so that the mother might draw the interest, and that he alone is responsible for the entry in that form.   If that was its purpose the entry was in accordance with the directions and wishes of the deceased, and if it was not it cannot change what was di-

rected to be done, nor can it in any way affect the rights of the two respondents. In *Drinkhouse* v. *German S. & L. Soc., supra,* the California Court of Appeals held that a deposit which was made payable to the depositor and another constituted an enforceable trust under facts much weaker than are those in the case at bar. In that case the deposit was in the joint names of the alleged donor and the donee, and the donor reserved so much of the fund as was necessary to pay her debts, and the remainder only should go to the donee. While the court held that the transaction in the form and manner in which it was made did not in law constitute a gift *inter vivos* of the whole sum, yet that the bank held so much of the money which was not required to pay the debts of the donor in trust for the use and benefit of the beneficiary of the trust. The Supreme Court of California approved that decision. By referring to the case as reported in 17 Cal. App. 162; 118 Pac. 953, it appears that a rehearing was "denied by the Supreme Court November 25, 1911," after a rehearing in the Appellate Court had been denied on "October 25, 1911."

A careful reading of the evidence has convinced us that it was the manifest purpose and intention of the deceased to place the money in question in a special deposit for the use and benefit of the two respondents. That what she did and said at the time the deposit was made constituted a gift of the money to the two children named and a delivery thereof to the bank as trustee to be held by it for their use and benefit during the life of the mother, with the right on her part of having the use and benefit of the accruing interest until her death, after which the money was to be paid to them. The transaction in law, therefore, constituted a gift *in præsenti* of the principal with the right of the donor to draw the accruing interest during life, and thus the full possession and enjoyment of the donees of the subject-matter of the gift was postponed until after the death of the donor. Such a gift is not invalid upon the ground that it is a testamentary disposition. See cases above cited, and also see *Wilson* v. *Carrico,* 140 Ind. 533; 40 N. E. 50; 49 Am. St. Rep. 213, where the principle is discussed and applied.

Nor is the fact important that the passbook was apparently in the possession of the deceased at the time of her death.  Where a deposit is claimed as a gift, a delivery of the passbook is ordinarily held necessary as evidence of the delivery of the subject-matter of the gift.  That is, the delivery of the passbook constitutes a symbolical delivery of the money on deposit.  Such, however, is not the case where, as here, the money is delivered to a trustee in trust for the beneficiary.  The delivery in such a case is actual, not symbolic.  A delivery to a trustee is, in legal effect, the same as a delivery to the donee.  Where, therefore, the facts are as palpably clear as they are in the case at bar that a gift was intended, and where the forms of law relating to gifts have been substantially complied with, it was the duty of the trial court, and it is our duty, to uphold and effectuate the purpose and intention of the donor, and not to defeat them by making nice distinctions or by placing a forced or unnatural interpretation upon her acts or words.  As pointed out by the courts, each case in which a gift is involved must, to a large extent, be controlled by its own peculiar facts and circumstances.  While it is true that certain forms of law must be complied with, yet it is also true that the intention of the donor must also receive due consideration and effect, and if in making a gift he has substantially complied with the latter, and it is clear that he intended to make a gift, his intentions must prevail.

The judgment is affirmed, with costs to respondents.

McCARTY, C. J., and STRAUP, J., concur.