[Sac. No. 2625. In Bank.—January 15, 1918.]

In the Matter of the Estate of WILLIAM H. GURNSEY, Deceased.

Joint Tenancy — Bank Deposit — Joint Deposits by Husband and Wife Under Written Agreement.—A written instrument executed by a husband and wife on opening an account with a bank agreeing that the deposit then made, and all deposits thereafter made to said account, should be held and owned by them as joint tenants created a joint tenancy.

Id.—Evidence—Parol Testimony Inadmissible.—In the absence of fraud or mistake, evidence was inadmissible to change the terms or legal effect of a written instrument executed by a husband and wife, creating a joint tenancy in deposits in a bank account, where the instrument was in no respect uncertain or ambiguous and its meaning was entirely clear.

Id.—Inheritance Taxes—Creation of Joint Tenancy not a Testamentary Disposition.—The creation of a joint tenancy in bank deposits of money, which was previously community property, is neither a testamentary disposition, nor a transfer of property to vest in one cotenant upon the death of the other, and was not a transfer in contemplation of death within the meaning of the inheritance tax law of 1905 (Stats. 1905, p. 341).

Id.—Legal Effect of Joint Tenancy—Common Law and Civil Code— When Title Vests.—Both at common law and under the Civil Code of California the legal effect of a joint tenancy is that the

title to the joint property does not pass to and vest in the survivor, upon the death of his cotenant, but that each tenant is seised of the whole estate from the first, and no change occurs in his title on the death of his cotenant.

INHERITANCE TAXES — LIABILITY TO TAX — WHAT LAW IN FORCE.—The question of liability to inheritance tax must be determined by the law in force at the time title vests by virtue of a transfer.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

Robert A. Waring, Inheritance Tax Attorney, and J. Paul Miller, Assistant Inheritance Tax Attorney, for Appellant State Controller.

W. A. Fish, and W. P. Johnson, for Respondents.

SHAW, J.—The state controller has appealed from an order of the superior court refusing to allow the payment of inheritance tax upon the sum of $10,151.97, which he claims was subject to such tax.

On April 11, 1911, the decedent, W. H. Gurnsey, and his wife, Harriet A. Gurnsey, executed an instrument in writing whereby it was agreed between them that the deposit account that day opened with the People's Savings Bank in their joint names, and all deposits thereafter made to said account by either of them, should be held and owned by said husband and wife as joint tenants, in joint tenancy. The instrument contained other terms descriptive of the nature and legal effect of the joint tenancy, but they did not change the legal character of the joint estate thereby created, as defined at common law, and as declared by section 683 of the Civil Code and section 16 of the Bank Act of 1909 (Stats. 1909, p. 87), then in force.

This agreement was left with the People's Savings Bank, and at the same time, and in pursuance thereof, W. H. Gurnsey, out of the community property, deposited in said bank to said account the sum of three thousand dollars. Thereafter, from time to time, other money was deposited by said W. H. Gurnsey to said account, and at the date of his death, which occurred on February 9, 1915, the amount of said account was the sum of $10,151.97.

In pursuance of his claim that this money was subject to inheritance tax, the appellant introduced the oral testimony of the widow, Harriet A. Gurnsey, detailing the conversation at the time said agreement was executed. She stated in substance that the agreement was executed in the bank, and was delivered to the cashier at the time of the deposit; that her husband stated that he wanted to deposit the money so that either he or she could draw it out at any time; that she did not read the agreement and did not understand the effect of it, except that she knew that either one of them could draw the money from the bank by check, and that she did not really know that she was a party to a joint account, prior to her husband's death. It is clear, however, that she intended to take by the agreement whatever benefits it conferred upon her. Neither she nor her husband drew any money from the account during his lifetime.

The agreement above set forth is in no respects uncertain or ambiguous. Its meaning is entirely clear. No testimony by either party was admissible to change its terms or its legal effect, in the absence of fraud or mistake. It is doubtful if the state authorities could set up such fraud or mistake in order to establish the right to inheritance tax in such a case, but whether this be true or not, no such claim is made in this case. The effect of the agreement was to create a joint estate in the property to which it relates, and the evidence introduced could not, under these circumstances, be allowed in any way to change the terms or legal effect of the agreement. The title to the money deposited passed out of the community at the time of the deposit, and it then became the joint property of the husband and wife, invested with all the attributes of such property, whether the wife understood its exact nature when she signed the agreement and accepted its benefits, or not.

The only question for determination, therefore, is whether, under this agreement, the property so deposited is subject to the payment of the inheritance tax.

The inheritance tax law in force at the time the joint account was created and the first three thousand dollars was deposited thereto in April, 1911, was the act of 1905. (Stats. 1905, p. 341.) The transfer to the joint account was complete and the title to the fund vested in the joint tenants as soon as the deposit was made. The title to each additional

sum deposited thereafter would vest when such sum was deposited. The dates of such additional deposits do not appear. The record shows merely that they were made "thereafter," that is, after the first deposit of three thousand dollars in April, 1911. It therefore follows that if there are any provisions of the inheritance·tax law of 1913 which differ from those of the act of 1905 with respect to the liability of this money to such tax, the act of 1913 must be disregarded and the question decided wholly upon the provisions of the act of 1905. The decision of the court below was that the fund on deposit at the death of Gurnsey in 1915 was not taxable. All the facts necessary to sustain this decision must be presumed in favor thereof unless the contrary appears in the record. Hence, if necessary to sustain the decision, we must presume that all of the deposits were made prior to the taking effect of the act of 1913. The rule on the subject is that the question of liability to inheritance taxes must be determined by the law in force at the time the title vests in virtue of the transfer. (*Hunt* v. *Wicht,* 174 Cal. 205, [L. R. A. 1917C, 961, 162 Pac. 639].)

The act of 1905 imposes inheritance taxes upon all property "which shall be transferred by deed, grant, sale, or gift, made in contemplation of the death of the grantor, vendor or bargainor, or intended to take effect in possession or enjoyment after such death."

The decision of the court below has the effect of a finding that the said joint deposit was not created or made by either party thereto in contemplation of death, or with the intent that the donee should not have the possession or use thereof until after the donor's death. This finding is not contrary to the evidence. The creation of a joint tenancy is not a testamentary disposition. Of itself, it raises no inference or presumption that it was done in contemplation of death. The evidence shows that the only purpose mentioned was to place the money so that each could draw it out at pleasure without the consent of the other, and that nothing was said between them concerning the death of either, or concerning the postponement of enjoyment by either, or restriction of the use of either. The court was justified in its conclusion that there was no expression by either party of the idea that the deposit was made to effect a transmission of the property at the death of William H. Gurnsey, or that he was to have

the exclusive use thereof during his lifetime. The instrument itself, therefore, controls, and the case depends upon the nature of a joint estate. The argument of the controller is that the creation of a joint deposit by a husband and wife out of money which was previously community property, is in legal effect a transfer of property to vest in the other upon the death of either; that the intent of the husband in the creation of this deposit is conclusively presumed to have been to transfer the property to his wife, to take effect, in possession and enjoyment by her, at his death.

This question was under consideration by this court in *McDougald* v. *Boyd,* 172 Cal. 753, [159 Pac. 168], where a joint account was created by a husband and wife in a manner substantially the same as here. The court said: "Mrs. Boyd did not take any interest in the deposits as heir of or successor to her deceased husband. She took by virtue of her estate originating at the time of the creation of the joint tenancies. The imposition of the tax cannot, therefore, be sustained upon the theory that the deposits formed a part of the estate of Colin M. Boyd, passing upon his death to his wife. Boyd died on March 13, 1912. The inheritance tax statute then in force was the act approved April 7, 1911 (Stats. 1911, p. 713), and this act did not undertake to impose a tax on the right accruing to a surviving joint tenant upon the death of his cotenant." The act of 1911, so far as that subject is concerned, is similar to the act of 1905, upon which the present case depends. The joint tenancy referred to in the Civil Code (sec. 683), and here involved, is the estate known as such at common law. In *Kennedy* v. *McMurray,* 169 Cal. 287, [Ann. Cas. 1916D, 515, 146 Pac. 647], we held that a joint deposit account made in the same manner as the account here involved, created a joint tenancy, and that such deposit was no part of the estate of the party who first died. In *Estate of Harris,* 169 Cal. 725, [147 Pac. 967], the court decided that a joint tenancy in personal property could be created by parol, and that "upon the death of one of two joint tenants, the survivor thereupon becomes the sole owner of the entirety, not by descent, but by survivorship and in virtue of the original grant creating the tenancy." In *Hannon* v. *Southern Pac. R. Co.,* 12 Cal. App. 350, 355, [107 Pac. 335], the subject was treated at greater length. It was there shown that, at common law, the title to the joint

property did not pass to and "vest in the survivor," upon the death of his cotenant, but that "each tenant was seised of the whole estate from the first, and no change occurred in his title on the death of his cotenant"; that "it simply 'remained' to him," and came to him "wholly from the original grant," so that after the death of one, the other, in pleading his title, could allege a conveyance by the original grantor to himself, without mention of the cotenant, citing Coke on Littleton, section 286, and 1 Washburn on Real Property, page 646, and concluding with the following: "It is therefore a mistake to say of joint tenants that the title vests in the survivor upon the death of the cotenant; or that it descends to him from his cotenant; for it had already vested in him by, and at the time of, the original grant." This is the legal effect of a joint tenancy at common law and under our code, and it would, of course, prevail without regard to the actual intent of the donor who created it. The inheritance tax law, prior to 1915, imposed such tax upon transfers by gift, "intended to take effect in possession or enjoyment," by the donee, only at or after the death of the donor. A transfer to joint tenants, without other conditions, does not come within that description, for, as above shown, it gives to the donee immediately the title and the right of possession and enjoyment of the whole, and he succeeds to no new title or right upon the death of his cotenant, but is merely relieved thereby from the further interference of the cotenant. The legislature of 1915 was evidently of the same opinion. The act of 1915 declares that deposits to joint account of the donor and donee, in joint tenancy, "shall be deemed to be a transfer intended to take effect in possession or enjoyment at or after the death" of the donor. (Stats. 1915, p. 436.) The statement in *McDougald* v. *Boyd*, 172 Cal. 753, [159 Pac. 168], that the act of 1911 did not undertake to impose such tax upon the "right accruing to a surviving joint tenant upon the death of his cotenant," is, in our opinion, correct. Some restriction upon the possession and enjoyment of the donee, other than that arising from the law of joint tenancy was necessary, under the previous acts, to bring the transfer within its definition.

The appellant refers to many cases where gifts and other transfers were made by the decedent in his lifetime, but the

control of the property was retained by him, and where from the circumstances the court deduced the conclusion that the transfer was made in contemplation of death, or to take effect in possession and enjoyment after death. These cases have no application here. The finding of the court below, upon sufficient evidence to sustain it, that this transfer was not made in contemplation of death, or to take effect in possession or enjoyment at or after death, excludes the basis upon which these decisions were founded. The mere creation of a joint account, and the addition to it of deposits made by way of gift from the community property to the joint estate, as we have shown, do not constitute conclusive evidence that the gifts were made in contemplation of death, or were intended to take effect at or after death. There is no force in the argument that the husband had entire control of the property from the time of the deposits until his death. It could be as truly said that the wife had such control. The agreement determined the persons who had the right of control of the property, and by its terms the wife had as full control as the husband. Upon the death of either the property remained, and all of it remained, the property of the survivor, as it was, in contemplation of law, from the time of its creation.

The order appealed from is affirmed.

Melvin, J., Sloss, J., Wilbur, J., and Angellotti, C. J., concurred.