## HOLT et al. v. BAYLES.

No. 5425. Decided December 28, 1934. (39 P. [2d] 715.)

*Joseph E. Richards,* of Salt Lake City, for appellants.

*Backman & Backman,* of Salt Lake City, for respondent.

FOLLAND, Justice.

Anna M. Bayles died testate December 16, 1930. At the time of her death there was a deposit of $12,947.57 in the Deseret Savings Bank to the credit of Anna M. Bayles or Emma Bayles. After the death of Anna M. Bayles, the money in the account was withdrawn by Emma J. Bayles, who claimed it as her own. Plaintiffs in this action are nieces of Anna M. Bayles and residuary legatees under her will. They brought this suit to have the money of the joint account declared the property of the estate of Anna M. Bayles and to require Emma J. Bayles, individually and as an executrix of the estate, to account for the same as the property of such estate.

After plaintiffs produced their evidence and rested, defendant's motion for a nonsuit was granted by the court

and judgment thereupon entered. Error is assigned to the granting of the nonsuit and to the rejection of certain evidence offered by plaintiffs. The evidence shows that Anna M. Bayles and Emma J. Bayles, known as Emma Bayles, went to the Deseret Savings Bank on January 16, 1929, and deposited $12,000 of a check drawn for $12,886. The check was made to the order of Anna M. Bayles by J. A. Scorup. It was indorsed on its back by Anna M. Bayles and Emma Bayles. At the time of opening the account these depositors signed the following card and left it with the bank:

"Account No. 55636

"Salt Lake City, Utah, Jan. 16, 1929.

"The undersigned joint Depositors hereby agree, each with the other, and with the Deseret Savings Bank, Salt Lake City, that all sums heretofore or hereafter deposited by or for said joint depositors, or either of them, with said Bank to their credit as such joint depositors, shall be owned by them jointly, with right of survivorship, and be subject to the check, or order or receipt of either of them, or the survivor of them, and payment thereof shall discharge said Bank from liability to either, or the heirs, executors, administrators or assigns of either. This agreement shall not be changed or terminated except by written notice to said Bank, and such notice shall not affect the rights of the Bank, or said depositors hereunder, with relation to deposits or withdrawals heretofore made.

"Each of us hereby authorizes the other to endorse checks and other instruments in writing drawn for the payment of money in favor of us or either of us, and deposit all moneys received in said account."

The account in the bank as shown on the ledger sheet was entitled, "Anna M. Bayles or Emma Bayles." A passbook was issued wherein was printed the following provision:

"This book is accepted and all deposits are made subject to the By-laws of the Bank as herein printed and made a part of this deposit contract. No payments can be made or money withdrawn without presentation of this book."

No other deposits were made in the account except the addition of interest, and there were no withdrawals until

January 27, 1931, after the death of Anna M. Bayles, when the principal and accrued interest in the sum mentioned above was paid to Emma J. Bayles on presentation by her of the passbook.

Under the direction of the Attorney General and for the purpose of determining the inheritance tax to be charged the estate, the following stipulation was executed and delivered to the bank:

"Whereas, the estate of said deceased has on deposit with Deseret Savings Bank, evidenced by pass book No. 55636, being a joint account in the names of said deceased and Emma J. Bayles, amounting to the sum of Twelve Thousand Nine Hundred Forty-seven and 57/100 Dollars ($12,947.57). That the estate has in addition to this deposit, property both real and personal of the probable value of Seven Thousand and no /100 Dollars ($7000.00).

"It is hereby stipulated and agreed by and between G. H. & M. V. Backman, Attorneys for the executrices of the estate of said deceased, and the Attorney General of the State of Utah, that there being ample property on hand exclusive of the deposit with Deseret Savings Bank, out of which the inheritance due the State of Utah will be paid, the deposit held by Deseret Savings Bank hereinbefore mentioned, may be transferred to the survivor under the joint tenancy, free of any claim against said sum of inheritance tax.

"Dated this 27th day of January, 1931.

"Signed G. H. and M. V. Backman,
 "Attorneys for Executrices,

"Signed Geo. P. Parker,
 "Attorney General, State of Utah,
 "By L. A. Miner, Deputy."

The attorney for plaintiffs testified that he met Emma J. Bayles in the office of her attorney, April 23, 1932, in the presence of her attorney and Anna Theodora Adams, a niece of Anna M. Bayles; that at that time he asked Emma if she had deposited any of her own money in the joint account; and that she said, "No, it was Aunt Anna's money." He then inquired about the passbook, and the answer was, "Aunt Anna kept it with her things." When asked if she ever had the passbook given to her to make withdrawals, she said, "No," that no withdrawals were

made during the lifetime of Aunt Anna. She was then asked, "When were you to have the money?" To which she replied, "When Aunt Anna died." Anna Theodora Adams gave testimony to the same effect with respect to this conversation. The inheritance tax was paid to the state of Utah on the whole sum. It was stipulated the probate file would show that subsequent to the date of depositing the $12,000 in the joint account Anna M. Bayles made and executed "a last will and testament now being probated in which there is no mention made of the joint account."

There are two sections of the statutes which refer to joint accounts in banks.

Section 1020, Comp. Laws Utah 1917, which provides:

"When a deposit has been made, or shall hereafter be made, in any bank, savings bank, banking institution, or trust company transacting business in this state, in the names of two persons, and payable to either or the survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons whether the other be living or not; and the receipt or acquittance of the person so paid shall be valid and sufficient release and discharge to the bank for any payment so made."

Special Session Laws of Utah 1919, ch. 8, § 1:

"Whenever property is held in the joint names of two or more persons, or as tenants by the entirety, or is deposited in banks or other institutions or depositaries in the joint names of two or more persons and payable to or cast upon either or the survivor, upon the death of one of such persons, the right of the surviving tenant by the entirety, joint tenant or joint tenants, person or persons, to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of Chapter 64, Laws of Utah, 1919, in the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased tenant by the entirety, joint tenant or joint depositor and had been bequeathed to the surviving tenant by the entirety, joint tenant or joint tenants, person or persons, by such deceased tenant by the entirety, joint tenant or joint depositor by will."

Neither of these sections is determinative of the rights of the joint depositors as between themselves, or after

death between the survivor and the personal representative of the other. The first section referred to protects the bank in making payment to either of the joint depositors or to the survivor, while the other section was enacted for the purpose of aiding the state in the collection of its inheritance tax.

The trial court in its decision was controlled largely by the agreement of joint tenancy executed by Anna and Emma Bayles. The effect to be given this writing is indeed the crux of the case. There are no allegations of fraud, overreaching, mistake, incompetency of parties, or failure of the writing to express the true intent of the parties, nor is there evidence which would support any such allegations if made. There is no claim that the agreement is ambiguous or uncertain. The argument of appellant is based on the contention that the entire deposit was made by Anna M. Bayles from her own property and that she never relinquished title thereto, and, further, that the deposit card agreement does not make a binding contract of survivorship or create a joint tenancy.

Questions which arise out of joint deposits of money in banks have given the courts a great deal of trouble. The cases are more or less in conflict, and some of the decisions do not clearly rest on any sound legal theory. Many cases are found in the books as to the effect of joint accounts. Such transactions have been treated as donations causa mortis, as gifts inter vivos, as abortive attempts at testamentary disposition, as the creation of a trust, as mere arrangements for the convenience of the owner of the money and conferring no beneficial right on the other party, or as showing the creation of a joint tenancy in a chose in action payable by the bank to either of the parties during their lifetime and to the survivor on death of the other. Notes L. R. A. 1917C, 550; 48 A. L. R. 189; 66 A. L. R. 881. There have been several decisions in this court on the subject of joint deposits, but none where the facts were the same as those disclosed by the evidence in this

case. *Holman* v. *Deseret Savings Bank,* 41 Utah 340, 124 P. 765; *Boyle* v. *Dinsdale,* 45 Utah 112, 143 P. 136, Ann. Cas. 1917E, 363; *Olson* v. *Scott,* 61 Utah 42, 210 P. 987; *Columbia Trust Co.* v. *Anglum,* 63 Utah 353, 225 P. 1089; *Christensen* v. *Ogden State Bank,* 75 Utah 478, 286 P. 638; and *Obradovich* v. *Walker Bros. Bankers,* 80 Utah 587, 16 P. (2d) 212, 218.

The Cases of *Holman* v. *Deseret Savings Bank, Olson* v *Scott, and Boyle* v. *Dinsdale,* supra, turned on the question of whether or not there was a gift inter vivos, not whether there had been the creation of a joint ownership with right of survivorship. *Columbia Trust Co.* v. *Auglum,* supra. This also was the theory on which *Christensen* v. *Ogden State Bank,* supra, was decided. In *Columbia Trust Co.* v. *Anglum* it was decided a joint deposit with right of survivorship was created. We shall refer more fully to this case later. The opinion in *Obradovich* v. *Walker Bros. Bankers* states the rule deducible from the Utah decisions, but does not decide anything with reference to joint deposits. The rule there stated is as follows:

"The mere fact that a person owning a fund deposits the same in the name of himself and another, without more, does not show either a gift or that the depositor intended to make such other a joint owner of the fund."

The contention of plaintiffs with respect to the written contract of deposit is that the writing "does not make a binding contract of survivor or create a joint tenancy," and that this written agreement "has no more legal effect than any other form of joint deposit." In support of their contention, they rely on the case of *Christensen* v. *Ogden State Bank,* supra. That case, however, is not controlling because there was no written agreement there such as the one executed by Anna and Emma Bayles. Jens Christensen gave directions in writing to the bank to add to his savings account the words, after his own name, "or Antone Christensen, payable to either or the survivor." Jens Christen-

sen retained possession of the passbook. The form of this deposit was held not to establish an intention on the part of Jens to make a gift of his savings account or some interest therein to his brother, Antone, or to establish a trust in favor of his brother. From all the evidence before the court it was held there was no intention to make such gift nor was a gift ever consummated. This decision is supported by the great weight of authority. In the present case, however, we have a written contract signed by both joint depositors in which an intention is clearly expressed with respect to the ownership and control of the deposit.

The decision in *Coumbia Trust Company* v. *Anglum,* supra, is more nearly controlling in this case. The facts there, however, were not on all points the same as here. In that case there was no written contract signed by the parties. The court said there was no legal reason why the parties, who there were husband and wife, could not have created a joint ownership in the bank deposit in question with right of survivorship, and from the evidence held that was clearly what they did do. The deposit was a checking account in the name of "William J. Anglum or Mrs. William J. Anglum." There was evidence that each contributed to the money in the account, that both had drawn on the account, that it was agreed between them the account should be kept as a joint account, and that the survivor should have the right and ownership of the money on the death of the other. The court quoted with approval from 3 R. C. L. 527, as follows:

"It is well established that a bank account may be so fixed that two persons shall be joint owners thereof during their mutual lives, and the survivor take the whole on the death of the other. In creating a joint bank account with right of survivorship, it is a matter of no importance that the particular terms 'joint ownership' and 'joint account' are not used; the controlling question is whether the person opening the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. No particular formula is required, and courts will be controlled by the substance of the transaction rather than by the name given it."

Where there is a joint agreement executed by the parties which clearly declares the intention to create a joint interest of each in the deposit or credit, the court will sustain such intention thus expressed, especially where the contract is not attacked for fraud, mistake, incapacity, or other infirmity. The plaintiffs have made no such attack on the instrument before us, but merely say that it is lacking in substance to create a joint tenancy or joint ownership in the deposit with right of survivorship. With this contention we cannot agree, since the language is clear and explicit as expressing an intention to do that very thing. It is there said that "all sums heretofore or hereafter deposited by or for said joint depositors, or either of them, with said bank to their credit as such joint depositors shall be owned by them jointly, with right of survivorship, and be subject to the check or order or receipt of either of them, or the survivor of them, and payment thereof shall discharge said bank from liability," etc. In addition to that, each was authorized to indorse checks and other instruments in writing drawn for the payment of money in favor of either and to deposit all moneys received in said account. Both parties signed the agreement and left it with the bank. The bank indicated on its ledger and passbook that the moneys in the account were payable to either of the parties. By this transaction there was created in form a present legal interest of both parties in the credit or deposit. Either of the parties was entitled to draw on the account during the lifetime of both and there was a declared intention that the survivor should be entitled to have and receive the entire sum remaining at the death of either. Strictly speaking, the deposit was a loan to the bank, with interest, on the terms stated. The deposit created the relation of debtor and creditor between the bank and the joint obligees. We do not regard the question of the original ownership of the money as controlling under the particular facts of this case. The evidence indicates it was owned by Anna, but the check after being indorsed by her

was also indorsed by Emma. From this fact alone it may be urged, with good reason, that Anna made a gift of the check to Emma. At least there is indicated intent on the part of Anna to transfer some interest in the fund to Emma. If Anna had been sick or confined to her home, and the account opened by Emma alone, a different inference might be drawn. Both parties went to the bank, deposited the check so indorsed, and signed the joint deposit contract. The parties purchased from the bank a credit payable to either of the joint depositors or to the survivor. Each of them had a present interest in the credit.

Where such intention is clearly expressed in a written contract executed by the parties, which remained unaltered, and there is no fraud, undue influence, mistake, or other infirmity alleged, the question of intention ceases to be an issue and the courts are bound by the agreement. In such cases the delivery to and possession of the passbook is not determinative of ownership of the account, since possession of the book is ordinarily in one of the parties, not both at the same time, and delivery to one must, in the nature of things, be a delivery to both. These views are well supported by the cases and text-writers. The rule is well stated in 5 Michie, Banks and Banking, 99:

"It is settled law that joint tenancies with the incident of survivorship obtain as to personal property, such as bank deposits. And a bank account may be so fixed that two persons shall be joint owners thereof during their mutual lives and the survivor take on the death of the other. In many states joint deposits are regulated by statute, under which the survivor is entitled to the fund without regard to the prior ownership or title to the property. The controlling question involved is the intention of the parties making the deposit, and not its mere form. Where such intention is evidenced by a written agreement this question of intention ceases to be an issue, and the courts are bound by the agreement. Where the form of the deposit is not one which on its face would necessarily imply a joint tenancy, with its consequent absolute ownership in the survivor, it is clearly open to proof, as to the nature of the ownership."

And in 8 Michie, Banks and Banking, 35:

"Where a savings bank deposit is in joint names, and the intent appears to create a joint tenancy, the survivor takes title to the entire fund, irrespective of whether he ever had any possession of the passbook, and of whether the money deposited belonged to the other."

The underlying legal grounds are stated in 38 Harvard Law Review, 244, as follows:

"But it would seem that a better analysis of the transaction indicates that B's interest is not one transferred from A, either as a legal interest or as an equity, but is a legal interest directly created in B by the depositary's promise to pay A or B, as joint obligees. Where both A and B sign the agreement of deposit with the bank, it is clear that the bank makes a direct promise to B. But even if B is not personally active in the matter, it seems the intention of the parties that the bank undertakes an obligation to .B equivalent to that undertaken to A, so that either, with the pass-book, may draw upon the account. And in this country, a promisor may undertake a direct binding obligation to an absent promisee for consideration furnished by a third party. The transaction seems, therefore, not one of legal gift from A to B, but the purchase by A for A and B of a contract right against the bank to be held from its creation jointly by himself and B. That there may be such joint obligations entailing the right of survivorship is generally conceded."

In *Kennedy* v. *McMurray*, 169 Cal. 287, 146 P. 647, 650, Ann. Cas. 1916D, 515, the court had before it facts somewhat similar to those here present. There, Bartholomew Kennedy and his daughter, Mary E. Kennedy, signed a paper entitled, "Conditions of Deposit," in which they declared the sum deposited in the joint account "shall be, joint as to time, title and possession, and further declare that they are not and have never been the separate property of either, and said sums are hereby made payable to either of us." In sustaining the right of the survivor to the deposit, the court said:

"When the written instruments were executed by himself and his daughter and as part of the transaction he had this money transferred from his account on the books of the bank and deposited in the names of himself or the appellant. The prior ownership by the

father of this money, however, is a circumstance of no importance if the written instruments declare and disclose a purpose and intent on his part in having the old deposit transferred to the new deposit account to thereby give his daughter a joint interest with him in it. It was his property and he could do with it as he pleased. We are not aware of any Code provision or principal of law which would prevent him by this transfer of deposits from his sole account to a joint account from giving her a joint interest or making her a joint owner with him in the latter deposit. Whether he intended to do so or not is the essential element in the case, and if that clearly appears from the instruments executed by him and his daughter when he made the deposit in their names we cannot look beyond those instruments. If it is clear on the question of intent the right of the parties must be determined solely from its consideration. No parol evidence could affect it."

Subsequent to this decision, a statutory provision was enacted in California whereby:

"The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor."

Deering's Gen. Laws Supp. 1925, Act 652, § 15a. In the case of *Hill* v. *Badelfy,* 107 Cal. App. 598, 290 P. 637, 640, decided subsequent to the enactment of the last-quoted statute, there was a written agreement of joint tenancy signed by the deceased and the survivor, similar to the one in the instant case, which the court held created an interest by both parties in the account and that it was owned by the survivor. The following language is used:

"It will be noted that the provisions of section 15a of the Bank Act do not require any formal written agreement between the depositors establishing a joint tenancy account, but in this case a clear and unambiguous writing was entered into between the depositors. In such case the rule is well settled that when a written instrument is executed by two parties on opening an account with a bank, agreeing that the deposit when made, and all accumulations, thereof, shall be held by them as joint tenants with the right of survivorship, each is seized of the whole estate from the creation of the tenancy, and the whole vests in the survivor without regard to the

prior ownership or title to the property. *Estate of Gurnsey*, 177 Cal. 211-215, 170 P. 402; *Kennedy* v. *McMurray*, 169 Cal. 287-291, 146 P. 647, Ann. Cas. 1916D, 515; *Estate of Harris*, 169 Cal. 726, 147 P. 967; *Conneally* v. *San Francisco S. & L. Soc.*, 70 Cal. App. 180-183, 232 P. 755.

"The question involved in cases of this character is the intention of the parties making the deposit, and where such intention is evidenced by a written agreement, as was done in the case at bar, this question of intention ceases to be an issue, and the courts are bound by the written agreement. *Kennedy* v. *McMurray*, supra; *Conneally* v. *San Francisco S. & L. Soc.*, supra."

In a still later case, that of In re *Fritz' Estate*, 130 Cal. App. 725, 20 P. (2d) 361, 363, is found the following:

"Appellant attacks the finding that the amount in this bank account was and is the property of the decedent as unsupported by any evidence. There is abundance of authority that, where a person deposits money belonging to himself in a joint account in the name of himself and another, and signs a written agreement with that other constituting himself and the other joint tenants therein, in the absence of fraud, undue influence, or mistake, a joint tenancy with right of survivorship is created, and that no evidence outside the writing itself is admissible to explain or vary its effect. *Kennedy* v. *McMurray*, 169 Cal. 287, 146 P. 647, Ann. Cas. 1916D, 515; *Conneally* v. *San Francisco S. & L. Soc.*, 70 Cal. App. 180, 232 P. 755; *Estate of Gurnsey*, 177 Cal. 211, 170 P. 402; *Estate of Nelson*, 104 Cal. App. 613, 619, 286 P. 439. This rule is strengthened by the provisions of the Bank Act, which both at the time of the creation of this joint account (Stats. 1925, p. 512, § 2) and at the present time (Stats. 1929, pp. 444, 445, § 3) contained in section 15a the following provision with regard to deposits," etc.

Another case presenting similar issues is that of *Hurley* v. *Hibernia Sav. & Loan Soc.*, 126 Cal. App. 314, 14 P. (2d) 574, 576. The written contract referred to a joint tenancy but did not say anything about right of survivorship. The court disposed of the contention of the parties in the following language:

"We are not aware of any Code provision or principle of law which would prevent decedent by this transfer of deposits from his sole account to a joint account from giving his son a joint interest or making him the joint owner with him in the latter deposit.

Whether he intended to do so or not is the essential element to be considered, and if that clearly appears fom the instuments executed by him and his son when he made the deposits in their names, we cannot look beyond those instruments. If it is clear on the question of intent the right of the parties must be determined solely from its consideration. No parol evidence could affect it.

"Appellant urges the contention that there was no written agreement; in other words, that the above-mentioned written evidence does not constitute the written agreement required. Considering the above writings, although the bank book is not signed by the depositors and while the card which is signed by them may be but a mutual declaration of the father and the son as to the deposits, the particular question is: Do they clearly disclose an intention on the part of the father when the deposit was made by him to the account of himself and his son, to constitute it and further deposits the joint property of himself and his son? We do not perceive how any other reasonable construction can ge given to the instruments than that he did. The written declaration as applying to him says so in express terms. The moneys were his before the deposit account was opened. He declares that as deposited by him it is not his separate property but the joint property of himself and his son. There is no ambiguity or uncertainty about this language. It was undoubtedly intended to and did create a joint interest or ownership in the deposit, and this being the intention, and as the right of survivorship applies to joint interests or ownerships of personal property, it must have been the intention of the deceased Hurley in declaring the deposit to be joint property to have intended that the incident which follows joint ownership should apply to it, and that upon his death his son should take the deposit as survivor."

In *Commercial Trust Co.* v. *White*, 99 N. J. Eq. 119, 132 A. 761, 763, there were two sets of deposits; one made in form of joint deposit on the books of the bank and on the passbook, payable to John J. Bullis or Lettie A. Dath (White), without any written agreement between the parties declaring their intent, and the other set of deposits where there were such written agreements. With respect to the first group of deposits the court said:

"Taking the signature cards, then, as showing the entire contract between Bullis, Mrs. White, and these two banks, in connection with the fact that all money in both accounts originally belonged to Bullis, that it does not appear that Mrs. White ever had possession of the

pass books evidencing these accounts, that she never withdrew money from either account and could not withdraw any in Bullis' lifetime without producing the pass books, I can find no donative intent by Bullis to give Mrs. White a then present interest in these two accounts. The form of these deposits indicates that, if he had any donative intent toward her, it was confined to such balance as might remain to his credit at his death, which interest should not vest in her until that time, thus making his gift a testamentary disposition of funds wtihout complying with the law of wills, and therefore void."

With respect to the deposits where the parties had signed written agreements of joint tenancy the ruling was:

"The real question seems to me to be: Do the facts show that there was an intention on Bullis' part to make a present gift of the accounts to Mrs. White, which the latter accepted by signing the deposit agreement? By the agreements with the banks, under which the accounts were opened, Bullis delivered his property to the banks, and procured from them a contract with, and for the benefit of, Mrs. White (as well as himself), and the banks became debtors to both of them. Thus a complete, valid gift or trust was made, under which the banks contracted to pay to Mrs. White, and I do not consider that delivery of the pass books into her hands was necessary to complete the contracts, at least so far as her right of survivorship is concerned."

The court also in its opinion referred to the question of possession of the deposit book:

"Where the subject-matter is a certificate of stock, a bank account, or other chose in action standing in joint names, delivery cannot be made to, and possession is usually not held by, both or all joint owners at the same time, and delivery to one must, in the nature of things, be a delivery to the other or others (*Dunn* v. *Houghton* [N. J. Ch.] 51 A. 71; *East Rutherford B. & L. Ass'n* v. *McKenzie*, 87 N. J. Eq. 375, 100 A. 931), and, since in the present case only one of the joint owners could hold the pass books (unless they were kept in a box or some place to which both could have access), the donor was the natural one of the two to hold them."

Oregon has a statute similar to our section 1020, Comp. Laws Utah 1917, but no statutory provision similar to section 15a referred to in the California cases. The Oregon

court, in *In Re Edwards' Estate*, 140 Or. 431, 14 P. (2d) 274, 277, sustained the right of the survivor to the deposit where there was a written depository agreement of similar purport, but not so clearly and definitely expressed as the one before us, and in so deciding the following language was used:

"When Mr. Edwards, June 28, 1930, deposited in the bank the sum of $2,377.60, with the approval of his wife, the relationship of debtor-creditor was created between the bank and the two Edwards. The legal status of the account was a chose in action. 7 C. J. 641. The bank now having become the debtor, the parties had the right to name as the creditor or creditors any individual or group which they chose, and also to provide that the happening of any contingency, as, for instance, death of the creditor or any of the creditors, should of itself change the identity of the obligee or obligees. Such being their rights, the three agreed that both of the Edwards or their survivor should be the creditors and that each should have the right to withdraw all or any part of the bank balance. Surely that agreement was based upon a valuable consideration, for the bank received $2,377.60 for its promise, and promised to give no more than it received. * * * The intent of the depositors being always the controlling factor, we know of no reason why the contract of the parties should not be given full effect. Where no evidence of intent is available except the form of the deposit, that must control. But when the intention is evidenced by a written agreement the question of intention ceases to be an issue and the courts are bound by the agreement. 5 Banks and Banking, § 46."

Other cases supporting the same view are *New Jersey Title Guarantee & Trust Co.* v. *Archibald*, 90 N. J. Eq. 384, 107 A. 472; *Commonwealth Trust Co.* v. *Grobel*, 93 N. J. Eq. 78, 114 A. 353; *Kelly* v. *Beers*, 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543; *Erwin* v. *Felter*, 283 Ill. 36, 119 N. E. 926, L. R. A. 1918E, 776; *Illinois Trust & Savings Bank* v. *Van Vlack*, 310 Ill. 185, 141 N. E. 546; *Chippendale* v. *North Adams Sav. Bank*, 222 Mass. 499, 111 N. E. 371.

Appellant has argued that the stipulation with reference to inheritance tax signed by the attorneys for the executrix of the estate of Anna M. Bayles, and which we have

quoted in full above, is binding as an admission of Emma J. Bayles that the estate was and is the owner of the deposit in question. It is quite apparent the purpose of this stipulation was to assure payment of the inheritance tax pursuant to the provisions of chapter 8, § 1, Special Session Laws of Utah 1919. Such stipulation cannot be now used to vary the terms of the deposit agreement which fixed the relationship of the parties with respect to the money in the bank.

Plaintiff offered in evidence as Exhibit E a promissory note for $12,400 signed by J. A. Scorup and Emma F. Scorup, payable to Anna M. Bayles. Objection thereto was sustained and such ruling assigned as error. It was stated the note was offered for the purpose of showing ownership in Anna M. Bayles of the check from Scorup to Anna for $12,886, $12,000 of which was deposited in the joint account. It was not error to exclude the exhibit. The check, already in evidence, similarly indicated ownership in Anna. But the check was indorsed to Emma and the joint deposit agreement signed by both parties. Under the circumstances it was immaterial how Anna came into possession of the check.

The judgment of the district court is affirmed, with costs to respondent.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.