[No. 1242.]

## OTTO T. SCHULZ, RESPONDENT, *v.* JOHN P. SWEENY, APPELLANT.

WATERCOURSES—ABANDONMENT OF WATER—WATER RIGHTS.—Where water from a flume—used for floating wood—has been discharged into a natural channel, as a matter of convenience, and for the purpose of getting rid of the water, without any intention to reclaim it, it becomes a part of the waters of the natural channel, and is subject to the same rights as the water naturally flowing therein.

ERROR—WHEN DOES NOT JUSTIFY REVERSAL.—An error in the decree of the court which works no injury to the losing party does not authorize a reversal of the judgment.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*A. C. Ellis* and *Wm. M. Stewart*, for Appellant:

*Clarke & King*, for Respondent:

By the Court, BELKNAP, C. J.:

Defendant, by means of a dam and ditch, constructed above the lands of plaintiff, diverted therefrom the waters of Lake View cañon. These waters are produced by rains and melting

snows, and, collecting in a channel, are increased by subterranean currents cut by tunnels driven into the mountains for that purpose. The body of water thus formed finds its way during a portion of the irrigating season by the channel, and through the depressions of Eagle valley, first to the lands of the plaintiff, and afterwards to the lands of the defendant. At times during the summer months the volume of water is materially increased by the water of a wood flume operated by a corporation known as the Sierra Nevada Wood & Lumber Company. The water of the flume forms a part of that appropriated by the Virginia & Gold Hill Water Company, also a corporation, organized for the purpose of supplying the inhabitants of the towns of Virginia City and Gold Hill with water for domestic and other purposes. This company acquires the control of a supply of water in the Sierra Nevada Mountains, presumably by reservoirs, aqueducts, and such other appliances as are employed by companies having a similar purpose. A portion of this water is conducted into the flume of the wood company for the purpose of carrying wood from the mountains to the terminus of the flume at the head of Lake View cañon. The water, after being thus used, is incapable of being conveyed by pipes to the localities where the water company is engaged in furnishing water, and it is therefore discharged. The point of discharge is upon a mountainous ridge dividing Eagle valley from Washoe valley. Water discharged at this point, following the natural depressions of the mountain, would find its way to Washoe valley. The water may also be directed to Eagle valley by means of a ditch leading from the flume to the cañon, and, when so directed, falls into the channel. Through the agency of the water company the discharged water has been sent, some years to one of these valleys, other years to the other valley, and again to both valleys. During the month of July, 1885, and before the commencement of this action, the water company, for a valuable consideration, leased to the defendant the water that should be discharged at the mouth of the flume during the remainder of the year. The district court decided that defendant acquired no rights by reason of the lease, and a decree based upon this conclusion was accordingly entered. In support of the decree it is said that if the right to dispose of the flume waters rested anywhere, it was in the flume company, and not in the water company; but that, in any event,

nothing passed by the lease, because the waters were abandoned.

In the view we take of this case, we deem it immaterial to inquire where the right of disposition rested. The water was discharged from the flume for the purpose of getting rid of it, and left to find its way to the natural level of the country, through the lands of others, without intention to reclaim or enjoy it. Neither company undertook to exercise any control over the water after it was discharged, save to direct it to one valley or the other, and so as to do no injury to settlers along its course. These facts are conclusive evidence of an abandonment. The effect of turning the waters into the channel was to make them a part of the stream, and subject to the same rights as the water naturally flowing therein. This principle will be shown by reference to authorities. In Goddard's Law of Easements, page 51, it is thus stated: "When a stream is natural, there can be no doubt that all waters which flow into it become a part of that stream, and subject to the same natural rights as the rest of the water, and that it makes no difference that the water so flowing to the natural stream was sent down by artificial means."

In *Wood* v. *Waud*, 3 Exch. 779, the effect of mingling the waters of an artificial drain with those of a natural stream was considered. The court said: "Have the plaintiffs a right to the waters of this slough, as described in the third count of the declaration? It appears to us to be clear that as they have a right to the use of the Bowling Beck, as incident to their property on the banks and bed of it, they have the right to all the water which actually formed part of that stream as soon as it had become part, whether such water came by natural means, as from springs, or from the surface of the hills above, or from rains or melted snow, or was added by artificial means, as from drainage of lands or of colliery works; and if the proprietors of the drained lands or of the colliery augmented the stream by pouring water into it, and so gave it to the stream, it would become a part of the current. No distinction could then be made between the original natural stream and such accessions to it." (See also Washb. Easem. 274; Ang. Watercourses, sec. 95; *Eddy* v. *Simpson*, 3 Cal. 249.)

In behalf of appellant it is claimed that the use of the channel for the purpose of conducting the water to the defendant's

dam was not an abandonment of the water. *Hoffman* v. *Stone,* 7 Cal. 47, and *Butte Canal Co.* v. *Vaughn,* 11 Cal. 143,[1] decide that it is not an abandonment of artificial waters to mingle them with the water of a natural watercourse for the purpose of conducting them to the point where they are to be used. In such cases the prior appropriator cannot complain of the use made of the bed of the stream, so long as the party conducting the water does not divert more than he has added to the stream. But these cases are plainly distinguishable from the one at bar. In them the water was turned into the stream for the purpose of diverting a like quantity at a point farther down; this was the end to be accomplished; while here the water was discharged into the stream as a matter of convenience, and without intention of recapturing it.

Exceptions were taken to the failure of the court to ascertain, by its findings of fact, the extent of defendant's appropriation of the water. The decree provides that the water of the channel shall pass over the lands of the plaintiff before any right to its use by defendant shall attach. In this respect it is technically erroneous. Defendant, as an appropriator of the water, should have the right to divert it to the extent of his appropriation, either above or below the lands of the plaintiff. The decree should have ascertained the amount of water to which he was entitled, and recognized this right. But the point at which the water might be diverted does not appear to have been a question at the trial. It was not shown that defendant could not divert the water as advantageously below the land of the plaintiff as above it. No pretense is made that by reason of this provision of the decree defendant is in any wise prejudiced in the use of the water. The diversion above the land of plaintiff by means of the dam and ditch was not because that was a more beneficial way of using the water, but was for the purpose of preventing the use of the flume water by the plaintiff.

The error works no injury to the defendant, and does not authorize a reversal.

Judgment and decree affirmed.