KONDAS *v.* WASHOE COUNTY BANK

No. 2735

November 8, 1928.                           271 P. 465.

*Clyde D. Souter,* for Appellant:

*Price & Hawkins,* for Respondent:

## OPINION

By the Court, COLEMAN, J.:

The plaintiff brought suit to recover $2,100 and interest. The court entered judgment for the defendant. On motion a new trial was granted as to a $600 item and denied as to a $1,500 item. The respective parties took separate appeals. The appeal of the plaintiff is now under consideration, and we will refer to the parties as plaintiff and defendant.

The plaintiff, who is a Greek and unable to read and write English, on September 6, 1919, went into the defendant bank, with which he had theretofore had business, and told a clerk that he wanted to buy drafts on the National Bank of Greece, Athens, Greece, for $2,100, payable on said Athens bank in drachmas.

After figuring for a time, the clerk determined the amount in drachmas which the $2,100 would purchase, the charges and commissions, and, after being informed as to this, the plaintiff instructed the bank clerk to issue him two drafts, one for drachmas costing $600 and the other for drachmas costing $1,500. The clerk prepared and had properly signed two drafts, in duplicate, one No. 3503 and the other No. 3504, which were delivered to the plaintiff, and thereupon charged plaintiff's account with the $2,100.

The original of draft No. 3503 as originally prepared was written in for 3250 lires, the word "Lires" appearing both in the body of the draft and after the figures "3250." But before delivery pen and ink was run through the word "Lires" and the word "Drachmas" written thereafter. In the duplicate of this draft, as appears from the photostatic copy in the record, pen and ink was run through the word "Lires" after the figures "3250," and the word "Drachmas" written above it, but in the body following the words "Thirty-two Hundred Fifty" appears "$\mathscr{L}$" with indications that the word "Lires" was once written there and all thereof erased except a portion of the stem of the letter "L." The word "Drachmas" nowhere appears in the body of the duplicate. The other draft, No. 3504, in both original and duplicate, is regular on its face, but instead of being issued in the sum of 8,125 drachmas, which is the sum for which it should have been issued, was issued for 81,255 drachmas—practically ten times what it should have been issued for.

It was the purpose of the plaintiff to take a trip to Greece when he purchased the drafts, and three days later he went to the bank and drew out, in cash, the balance of his deposit, and left for Salt Lake City, where he expected to meet a countryman and make the journey to Greece with him. Upon meeting his friend they called upon the Greek consul, who told them of the war existing between Greece and Turkey, and advised them not to undertake the trip. They obtained work and returned in January with a view of making inquiries of

the consul, and learned the conditions were unchanged. He then decided to send the drafts to the bank in Athens for deposit to his credit, at interest. On the 21st of January, 1920, he wrote to that bank enclosing the drafts with instructions. The bank, due to disturbed conditions, did not receive the letter until late in February. The defendant learned of its mistake in the amount of the second draft a few days after issuance and cabled the bank in Athens to pay it in the amount of 8,125 drachmas, only.

Upon receipt of plaintiff's letter containing the drafts the Athens bank refused flatly to pay the altered draft and wrote to the plaintiff stating that it had received the cablegram directing it to pay the other draft in the sum of 8,125 drachmas instead of in the amount stated therein, and asked if they should pay it in that amount.

On June 23, 1920, the plaintiff wrote to the Athens Bank, saying:

"* * * and I beg you warmly to send back to me my draft (the one for 81,255 drachmas) because there is a great difference between me and the bank here, and the which difference I cannot settle without the above draft."

This letter was written in Greek, and the above quotation is from the translation in evidence. After the two drafts were returned to the plaintiff he demanded his money back from the defendant. It refused to pay back the money but offered to issue new drafts. The plaintiff refused to accept new drafts and brought this suit. Though the complaint as drawn contained seven counts, the case was tried upon the count to recover $2,100, for money had and received. This appeal involves only the draft issued for 81,255 drachmas.

Our attention has been directed to several New York cases, which, it is claimed, throw some light upon the main question in the case. We do not deem it necessary to review these cases, as the facts in none are identical to those in the instant case.

■ In the instant case the parties entered into a verbal contract to the effect that the defendant would issue to

the plaintiff a draft upon the National Bank of Greece, at Athens, payable in the sum of 8,125 drachmas, on presentation. The plaintiff paid his money for the draft and in return received a draft upon which he could receive nothing when it was presented for payment. It is true that the bank was instructed by cable to pay in the sum of 8,125 drachmas, but it did not do it on presentation, nor could it have been expected to do so in the circumstances. The inability of plaintiff to collect his 8,125 drachmas was due solely to the fault of the defendant. In this situation who should suffer? Should it be the ignorant Greek who paid his hard-earned cash and is no way at fault, or the one through whose negligence the loss, incident to declining drachmas, was caused? The situation seems too clear to call for even a doubt. In the case of Safian v. Irving Natl. Bank, 190 N. Y. S. 532, the court in passing upon a contract to transfer money by cable, said:

"It is clear that the defendant's 'engagement' was not met by it. On ordinary principles governing the law of contract it seems clear that the plaintiff thereupon has the right to recover back the consideration paid by him."

On appeal, the court, speaking through Page, J., said:

"In my opinion this case is simply a breach of the express contract on the part of the defendant by failure to perform, and the plaintiff was entitled to recover back the money that he had paid to the defendant." 196 N. Y. S. 142.

Though the facts in the case mentioned are dissimilar from those in this case, the principle stated applies.

The defendant contends that the plaintiff could have authorized the Greek bank, in response to its inquiry, to pay the draft for 8,125 drachmas. There are two or more answers to this, but one suffices: He was entitled to a draft payable on presentation. He did not get it.

■ But it is claimed that the action for money had and received will not lie. In this we disagree with counsel. In Smart v. Valencia et al., 50 Nev. 359, 261 P. 655, we quoted approvingly the following:

"An action for money had and received can be maintained whenever one man has received or obtained the possession of the money of another, which he ought in equity and good conscience to pay over. This proposition is elementary. There need be no privity between the parties, or any promise to pay, other than that which results or is implied from one man's having another's money, which he has no right conscientiously to retain. In such case the equitable principle upon which the action is founded implies the contract and the promise. When the fact is proved that he has the money, if he cannot show a legal or equitable ground for retaining it the law creates the privity and the promise. 2 Chitty, Cont. 899 (11th Am. Ed.) ; Mason v. Waite, 17 Mass. 560; Hall v. Marston (17 Mass. 575) Id. 574; Knapp v. Hobbs, 50 N. H. 476; Eagle Bank v. Smith, 5 Conn. 71 (13 Am. Dec. 37). It is not necessary that the defendant should have accepted the money under an agreement to hold it for the benefit of the plaintiff, or that the party from whom he received it intended it for the plaintiff's benefit. Neither is it necessary that the money received by the defendant should have been an exact and specific sum, belonging exclusively to plaintiff, and entirely separate and distinct from any other moneys. We have found no case which lays down any such narrow rule. Allanson v. Atkinson, 1 M. & S. 583; Heartt v. Chipman, 2 Aiken [Vt.], 162."

We think the facts of this case bring it within the rule quoted.

For the reason given the judgment and order are reversed, and it is ordered that the trial court enter judgment in favor of the plaintiff for $1,500, with legal interest from September 6, 1919. Plaintiff to recover costs in both courts.

ON PETITION FOR REHEARING

January 4, 1929.

*Per Curiam:*

Rehearing denied.