JENNIE EDMONDS, Appellant, v. B. F. PERRY, in
His Representative Capacity as Administrator
of the Estate of C. W. Perry, Deceased,
Respondent.

No. 3344

July 19, 1943. 140 P.(2d) 566.

42

44

*Harry H. Austin,* of Las Vegas, *Alfred H. McAdoo,* of Yuma, Ariz., and *Orion W. Locke,* of Canon City, Colo., for Appellant.

*Alfreda Noland* and *Dan V. Noland,* both of Canoga Park, Calif., for Respondent.

## OPINION

By the Court, WATSON, District Judge:

This action was brought by one Jennie Edmonds, a sister of deceased C. W. Perry, against the administrator of the latter's estate, B. F. Perry, another brother, seeking to recover on three claims theretofore filed against the estate and having been rejected.

Plaintiff and cross-defendant appeals from the judgment of the lower court in favor of defendant and cross-complainant, and from the order denying plaintiff

and cross-defendant a new trial, and makes ten assignments of error and specifications of insufficiencies of evidence.

In the interest of brevity parties will here be designated as plaintiff and defendant, respectively, as in the court below.

Briefly, the facts are that deceased, a long-time resident of Las Vegas, Nevada, died there intestate on February 20, 1937. April 30, 1937, and while one Roland H. Wiley was administrator, plaintiff filed claim against the estate for $3,522.18, consisting of three items as hereafter appears, being disallowed and disapproved by B. F. Perry who had been appointed administrator July 19, 1937. At the time of his death and since the acquisition of the real property described in the pleadings, deceased had resided on part of it, and rented other portions thereof to others, receiving and receipting for rents, paying taxes and otherwise treating it as his own, at diverse times stating, "Sister held it for him," "Told me property belonged to him, transferred to his sister to protect it," and "Transferred for safe keeping in trust is the way he said it to me," also, "Had confidence in Jennie, transferred his property and sent her money,— better with her than in a bank, because he was afraid to get tangled up in law suits in Las Vegas."

In December 1932, account number 6241 was opened in the First State Bank, later First National Bank, of Las Vegas, Nevada, in the name of plaintiff Jennie L. Edmonds, signature card being signed by her and providing, "This a/c also subject to withdrawal by C. W. Perry, for authority see letter 12/12/32." The deposit appears to have been made December 9 and the signature card signed in Colorado December 16, or seven days later.

On the date of the deposit in this account, December 9, 1932, deceased's savings account No. 5217 shows a withdrawal of an identical amount, $1,875.79. Plaintiff stated that she had made no deposits to account No. 6241 either before or after death of deceased, that they

had had an account before when deceased was in Colorado, didn't remember when or how much, that she made one withdrawal from No. 6241 in 1933 when he was sick, and from the balance of $7,110.82 at the time of his demise, in this account, plaintiff drew $650 out of which she paid the funeral expenses claimed, but states that it was her money. There were numerous deposits and withdrawals made in this account preceding the death of deceased, presumably by deceased.

Because each of plaintiff's three causes of action are distinct each from the other in some respect, they will be treated in their order, and the opinion expressed or decision in each is applicable to each of the others and to this proceeding as a whole.

We will first consider plaintiff's claimed error that finding No. II is not supported by the evidence. This finding as follows: ("That it is not true) that during the latter portion of February, A. D. 1937, the plaintiff paid out and disbursed for funeral expenses of the said deceased the total Sum of $636.53 [or any other sum or amount as alleged in her complaint."]—brackets ours—is in the exact wording of the charging portion of plaintiff's complaint, except for the bracketed portion. Otherwise plaintiff's first cause of action alleged only, death of decedent, establishment of administration, that she was a sister, that she filed her claim, received notice of rejection, and that no part had been paid.

Plaintiff's evidence in support of her first cause of action consisted of introduction of bills, paid by her, in the amount alleged, without objection, except as to certain penciled notation on one of the bills. And that she had not been repaid.

There is no allegation or evidence that the expenditures were made otherwise than as a volunteer. A complaint for money expended and services performed should state the money was expended and services performed for the use and benefit of defendant, and at his instance and request, Huguet v. Owen, 1 Nev. 464. In McGlew v. McDade, 146 Cal. 553, 80 P. 695, plaintiff paid

a doctor bill of his deceased sister and brought suit against the estate to recover, the same as plaintiff has done here, and it was held that in such a case he had paid it without request and as a mere volunteer, and could not recover, and that the state was not bound to accept him as a creditor. Shumway v. Earley et ux., 56 Ariz. 124, 106 P. 2d 194, 196, "It is well settled law that one who voluntarily pays the debt or obligation of another, when under no duty to do so, may not recover his outlay." The essence of the right to recover money paid, in the absence of an express request to make it, is the compulsion to make it; it is elementary that a voluntary payment for the benefit of another cannot be recovered at law, 41 C. J. 14, sec. 3; Pendergrass v. Axx, 111 Cal. App. 478, 295 P. 896; McGee v. City of San Jose, 68 Cal. 91, 8 P. 641; Stanley v. Westover, 93 Cal. App. 97–111, 269 P. 468.

■ It is true this question of sufficiency of pleading was not raised in the court below and would perhaps be considered as having been waived were it raised here for the first time, under ordinary circumstances, but here there is an attack on a negative finding in the identical language of the complaint, which otherwise shows no request or promise, no obligation, duty or compulsion. It appears to the court that a finding in the affirmative with reference to this allegation, without other findings as to request and promise to repay, or compulsion to pay, would be in effect determining a moot question. The mere finding that plaintiff paid a certain sum for funeral expenses could not, in the opinion of the court, sustain a favorable conclusion of law in favor of plaintiff in relation to her first cause of action. The finding to the contrary, therefore, would affect no substantial right of plaintiff, and at most would be objectionable as a finding of fact, not material to the issues. For this reason the question as to whether a cause of action is stated does become of importance in determining the error committed, if any. Where no material issues arise directly from the pleadings, the

findings of fact in the case are also immaterial, though both parties go to trial without objection. Bulwer Con. Min. Co. v. Standard Con. Min. Co., 83 Cal, 589, 23 P. 1102.

There was likewise no evidence of request or promise, duty or obligation, to pay, adduced at the trial, under which the court might, under section 8637 Nevada Compiled Laws 1929, have made or directed findings of fact accordingly.

██ Treating the allegation as stating a cause of action and therefore material to the issues here, for the sake of argument, it being denied on information and belief, the burden was with plaintiff to establish the material portions thereof by a weight or preponderance of the evidence, to the extent at least of making out a prima facie case. The question then arises as to whether the source and ownership of the money actually paid out for funeral expenses became an issue, or material to the issues under plaintiff's first cause of action. We point out that plaintiff introduced the evidence of account No. 6241 and signature card signed by her subjecting account to withdrawals by deceased, being plaintiff's exhibits 8, 7, 9 and 10 respectively. This evidence was probably intended to support the allegation in plaintiff's second cause of action, of a deposit in the First State Bank and withdrawal therefrom, but it was introduced without reservation or limitation, and so became a subject for consideration as to all matters in the case, the same as other testimony, the demeanor of the witnesses, et cetera, and plaintiff would be bound thereby, as to all three causes. Plaintiff likewise testified or admitted that she made no deposits and but one withdrawal during the lifetime of deceased, that she didn't know exactly when the first deposit to this account was made and that she signed the signature card in Colorado, and that the money allegedly expended for the funeral expenses came from this account No. 6241.

█ Many deposits in and withdrawals from this

account were made during the lifetime of deceased, self-evidently by deceased, he being the only person other than plaintiff and the bank connected with the account, it being presumed that the ordinary course of business has been followed, unless contradicted. Stats. of Nevada 1931, chap. 50, sec. 1, subsec. 558g, subd. 20, N. C. L. Supp. 1931–1941, vol. 2, p. 1227, sec. 9047.07, subd. 20.

The court feels as pointed out in defendant's appeal brief that the ownership of account No. 6241 was material to the issues, if any material issues were made, in plaintiff's first cause of action. If the funeral expenses were paid from funds belonging to deceased, or from funds not proven to belong to plaintiff, which the lower court seems to have found by finding No. III for the purposes of this trial, most certainly plaintiff could not prevail on the evidence presented. And judgment to that effect would find support in the evidence or the lack of it.

■■ Technically the plaintiff's evidence supports a physical payment of money by her but fails to show the money used to have been hers. The facts are certainly opposed to any conclusions or decisions in her favor. It was evidently the intention of the trial court in this case to make a finding against the plaintiff in the identical language of the complaint. If it is ambiguous or uncertain because of this, it may be stated that a finding, generally, which is in the identical language a negation of the allegation in the complaint is sufficient, Turner v. Turner, 187 Cal. 632, 203 P. 109, 111; Dan v. Zink, 112 Cal. 91, 44 P. 331; McCarthy v. Brown, 113 Cal. 15, 45 P. 14; Hayne, New Trial and Appeal (Rev. Ed.) sec. 242. As a general rule findings are to be construed so as to support the judgment, Turner v. Turner, supra. In Brett v. Vanomar Producers, 45 Cal. App. 286, 187 P. 758, 760, it was said "Plaintiff selected his own terms by which to tender the material issue of fact as to what the contract really was, and the question was submitted to the court in the language which the

plaintiff employed. If the form of the statement was sufficient for the complaint, it should not be held lacking for the purpose of the finding."

It appearing that this finding is responsive to the pleadings (though this point was not argued or briefed) and being considered together with finding No. III, is sustained by evidence, and that no substantial right of plaintiff is or was prejudiced thereby, finding No. II should be sustained.

Plaintiff's second cause of action, paragraph III, alleges: [That prior to the demise of the said C. W. Perry and on or about the 3d day of January, A. D. 1936, this plaintiff had on deposit in the First State Bank of Las Vegas, Nevada, the sum of $2,392.15,] and that on or about said last-mentioned date, the said C. W. Perry withdrew said sum from said bank and deposited the said amount in a Untied States Postal Savings account in his own name. Brackets ours. Otherwise her allegations are a repetition of those in her first cause of action.

Defendant's amended answer denies this paragraph on information and belief, and admits paragraph IV, except denies on information and belief, "That the said sum of $2392.15, or any other sum of money was taken from the account of plaintiff in the First State Bank of Las Vegas, Nevada, and deposited by the said deceased, C. W. Perry, in United States Postal Savings account in the name of said C. W. Perry, or otherwise or at all." The lower court's third finding with reference to this cause of action found:

(A) "That it is not true that prior to the demise of the said C. W. Perry and on or about the 3rd day of January, A. D. 1936, the plaintiff had on deposit in the First State Bank of Las Vegas, Nevada, the sum of $2392.15, or any other amount.

(B) "That it is true that on the 3rd day of January, 1936, and for a long time prior thereto, and at the time of his death, the said C. W. Perry had on deposit a large

sum of money in the said First State Bank of Las Vegas, Nevada, in Account No. 6241, which account the said C. W. Perry carried in the name of Jennie Edmonds, and when said C. W. Perry died there was on deposit in said account the sum of $7,110.82, and the money in that account at the time of the death of said C. W. Perry did not belong to Jennie Edmonds, but was the property of C. W. Perry."

Plaintiff claims prejudicial error in this finding that: First, it is not supported by the evidence. Second, it is not responsive to the issues in the case or the issues made by the pleadings. Third, that no issue of ownership of this bank account was made by the pleadings and any trial of such question constituted a surprise to plaintiff, forcing plaintiff to meet such issue without opportunity to her counsel to prepare to meet the same. Fourth, the evidence is insufficient to support this finding, even if any issue of the ownership of this bank account had been pleaded or had been in the case. We point out that in this finding (A), the court below found as a matter of fact that plaintiff did not have a deposit in the said sum in said bank at the time as alleged and denied, it likewise being denied that the alleged or any sum was taken from her account. It appeals to the court that this finding, if correct, is conclusive of plaintiff's right of recovery. If she had no account as alleged, any money expended, if expended, not being hers, how could she expect to prevail? It should have been no surprise to plaintiff that it was incumbent upon her to establish ownership of this account. She alleged—"This plaintiff had on deposit—", self-evidently a claim of ownership; unless she had alleged an agency, a trust or other relationship, entitling her to recovery, which she did not do. Had plaintiff's pleadings alleged that her referred to deposit was account No. 6241, there might be some merit to plaintiff's contention that ownership in defendant should have been pleaded specially—it might or

might not have become an affirmative defense which must be specially pleaded, depending on whether defendant sought affirmative relief with reference to this account. It is not an equitable defense nor does it amount to a confession and avoidance, or matter of prevention, waiver or excuse for nonperformance of a contract, as in Richter v. Adams, 19 Cal. App. 2d 572, 66 P. 2d 226, cited by plaintiff. We point out that the defendant did not seek affirmative relief with reference to this account, nor did the court grant any. We are constrained to disagree with plaintiff's contention and citations; that answer was not the subject of amendment to conform to the proof as materially changing the defense or nature thereof: "No variance between the allegations in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been so misled, the court may order the pleading to be amended, upon such terms as may be just," Nevada Compiled Laws 1929, sec. 8636; also see sec. 8640. Allowance or refusal of leave to amend pleadings in actions at law is discretionary with the trial court, the exercise of which is not reviewable except in cases of gross abuse of discretion; Truckee River General Electric Co. v. Benner, 9 Cir., 211 F. 79, 81. Out of the mouth of plaintiff on direct and cross-examination, and by her witnesses and evidence, it was revealed that for the first time she referred to a withdrawal from account No. 6241 (January 2, 1936, her exhibit No. 10), which she claimed as her deposit. The court was justified in considering evidence of the ownership of this deposit or account, on the general denial of defendant, without special plea or necessity of amendment.

Plaintiff's right to, or ownership of, this deposit or account was a material issue here made by the plaintiff. Assuming as heretofore that deceased initiated the account with his money, made all deposits to, and all

except one withdrawal therefrom, during his lifetime as appears mainly by plaintiff's own evidence, and there being no evidence to the contrary, it seems there is sufficient evidence, not at variance with the pleadings, to sustain a finding that plaintiff did or did not have the alleged deposit, and that some finding in this regard was essential to sustain conclusions and decisions, either for or against plaintiff. Again, if the finding is objectionable as being in effect a conclusion of law, though this point is not raised here, it would seem that plaintiff could not complain, it being in the negative in the identical language of the complaint, Turner v. Turner, supra; on such a contention we must conclude that the complaint alleged conclusions of law and not ultimate facts.

The main contention of plaintiff seems to be that the initial deposit in account No. 6241 in her name; despite the signature card (her exhibit No. 7), signed only by her and subjecting it to withdrawals by deceased; and despite the fact of deceased's almost exclusive control of the account as shown by withdrawals and deposits by him; constituted her the owner of the account. This on the theories, that it became a joint tenancy account, with right of survivorship, or that on the facts claimed by defendant, it became a gift inter vivos, or that the deposit in plaintiff's name made it her account or deposit.

It is true as pointed out by plaintiff that the law presumes that a deposit belongs to the person in whose name it is entered, generally. This by business and banking practice and usages seems a reasonable legal conclusion based upon the well-known fact that most deposits actually are made by a depositor in his own name, or in the name of another for the latter's use and benefit, because the money actually is due, or belongs, to him. Where as here, however, deceased did not divest himself of the dominion and control over the funds, there was no showing that the money deposited belonged to plaintiff or was owing to her, but rather evidence of the fact the money was actually deceased's,

it was certainly a matter for judicial determination; 7 C. J. 639, note 83 and sec. 325 idem; 9 C. J. S., Banks and Banking, sec. 285, note 87, and sec. 287; where, as here, plaintiff laid no claim to the account until after the death of deceased, and deceased could at any time during his lifetime have withdrawn the whole of the account, the presumption seems to us to have been rebutted. The credit given on the bank's books is only prima facie evidence of the rights of the person to whom the deposit was credited; and, generally speaking, money deposited to the credit of one person may be shown by circumstances to belong to another; 9 C. J. S., Banks and Banking, sec. 287. We find no authority to sustain such a presumption under the facts here, all cases found or cited where it has been indulged to the extent contended for by plaintiff, have been cases concerning the rights of depositors as against banks or depositories; not as here where one in whose name money was deposited, seeks to recover after his death money expended by deceased during his lifetime from the account on which he was authorized to draw.

We point out that plaintiff's exhibit No. 7, the signature card, contains an unsigned joint tenancy agreement below and subsequent to the signature. It is apparently not contended nor do we believe that this portion has any bearing on the deposit, and on the contrary, its lack of execution and its being so readily available for signature of both parties might readily be interpreted as an intent that joint tenancy theory should not apply to the account. Nor could plaintiff's exhibit No. 18 postscript, "After all of the taxes are paid the rest will show on your Bank Book so there won't be any mistake about it they mite think the Property Belonged to me," be conclusive that this was a joint tenancy account with right of survivorship as defined by our statutes, sec. 743 N. C. L. 1929, as amended 1931, it might show in her bank account for any number of reasons, as for instance, convenience, or for the purpose of avoiding litigation against him, et cetera. Nor is the

intention there made clear enough to invoke the parole evidence rule. In the case of Hill v. Badeljy, 107 Cal. App. 598, 290 P. 637, 638, relied upon by plaintiff there was an executed joint tenancy agreement providing among other things that all deposits regardless of previous ownership, "Are and shall become our property as joint tenants and not as tenants in common and shall be payable to any of us during our lives or to the survivor or any of the survivors * * *," the action was based upon fraud, undue influence, et cetera, which was not proven, therefore held to be a joint tenancy. Henry v. Bank of America, 8 Cal. App. 2d 353, 47 P. 2d 1068, likewise involved a signed agreement of joint tenancy account with right of survivorship "with reference to money now deposited or which should at any time be deposited," holding is not persuasive on any point involved here. Wallace v. Riley, 23 Cal. App. 2d 654, 74 P. 2d 807, involved conflicting claims of living depositors as joint tenants under a written agreement substantially in the language of bank act, and is not decisive of any point here. We have no quarrel either with California, holding contrary to New York under the common law, that "money withdrawn from such account during the joint lives of depositors will retain joint tenancy character in property acquired thereby or in another account to which it is traceable." We point out, however, that the common law prevails in our state as to decisions unless modified or changed by legislation.

▇▇ Plaintiff's exhibit No. 15, in part, "Well Jen, sign these cards so that our account is joint account and if there is anything happens to me, you can get it without any law and it is a joint account and either can get it. Sign where the x is and send them back to the bank," referred to an account concerning which plaintiff testified, folio 526 and 530, "They had a joint account before when he was in Colorado, * * * don't .remember when or how much money they had in that account." Folios 526 and 530 could be determinative of nothing in the instant case. Deceased had been a long-time resident of

Nevada, his intention with reference to a joint tenancy account years before in Colorado could create no presumption favorable or otherwise as to his intention relating to this account, it might as readily be presumed to be reason for not creating a joint tenancy account.

■ Was this deposit made in the name of the depositor and another person as provided by section 743 N. C. L. 1929, as amended 1931? It might be inferred that it was by subjecting it to the withdrawals by deceased also. But was it deposited in a form to be paid to either or the survivor? It seems the court below would be justified in holding that it was not, in the absence of evidence, parole or otherwise to the contrary. The record is barren of evidence of the intention of deceased otherwise, his conduct at the time of the first deposit, statements made, questions asked, et cetera, at or near the time, from which a presumption of intent might be gathered. The fact that a pass book is made out in the joint names of two persons is evidence simply of the depositor's intent that the deposit may be drawn out by either of the persons named, 7 C. J. sec. 908; 9 C. J. S., Banks and Banking, sec. 993; here the deposit was not so made, but inferring that it became in substance a deposit in their joint names as above for the sake of argument, the court would not be precluded from considering this as a form of deposit for convenience, or subject to the withdrawal by either during their lifetime only, instead of a joint tenancy deposit. Here plaintiff does not ask judgment for the delivery of the savings bonds, or the money from any particular account, traceable as the result, or recipient of, the funds here concerned.

■ Nor do we feel there is clear, unconflicting evidence of a joint tenancy, substantially within the statute or at common law, to which the courts have held the right of survivorship is incident, in some jurisdictions. Applying plaintiff's citation, 33 C. J. p. 903, sec. 4, "Joint tenancy and the incident of survivorship applies to personal property as well as to real estate," to sec. 1513,

N. C. L. 1929, "Every interest in real estate granted or devised to two or more persons, other than executors and trustees, as such, shall be a tenancy in common, unless expressly declared in the grant or devise to be a joint tenancy," and to our sec. 3710 N. C. L. Supplement 1931–1941, "* * * A joint tenancy in personal property may be created by a written transfer, agreement, or instrument," it would seem we have limited rather than favored or extended the application of the theory of joint tenancy. The court below was not legally bound to interpret this as a joint tenancy account.

■ Plaintiff contends that on facts claimed by defendant, for example, the opening of the account in the sole name of plaintiff, divested deceased of dominion and control and prima facie constituted a completely executed gift inter vivos. As heretofore pointed out the record is void of evidence as to circumstances surrounding the initial deposit in this account No. 6241 by deceased, as evidencing his intention at the time. It is the duty of the courts to effectuate the intentions of one in the disposal of his property, when ascertained, if he complies with the forms of law. But when they must be implied, the facts from which the intention to make a gift must be inferred should be clear and unequivocal, Holman v. Deseret Sav. Bank, 41 Utah 340, 124 P. 765, "especially where the gift is claimed by a stranger after the alleged donor's death." In the case of Boyle v. Dinsdale, 45 Utah 112, 143 P. 136, Ann. Cas. 1917E, 363; cited by plaintiff, the above case is referred to and distinguished. That case and others cited being authority for the proposition, that if one makes a deposit in a bank in the name of another, or otherwise in such manner as to constitute the bank a trustee for the donee, in such manner as to divest the depositor of all dominion and control over the fund, he retaining no power of revocation, and such intent being clearly shown as in the cited cases, and the donee, upon being informed of the deposit and its purposes, assenting thereto, makes the transaction in law a completed irrevocable gift inter

vivos. And this though the donor may retain some beneficial interest such as taking the interest or income from the deposit, during his lifetime. There are cases which hold that though the donor makes a formal deposit in trust for another and communicates the fact to others, it is not enough, until it has been communicated to donee or some one acting for his benefit and has been accepted by him; Ann. Cas. 1917E, 368. To make a valid gift of personal property inter vivos, delivery must be completed in donor's lifetime, Azevedo v. Azevedo, 1 Cal. App. 2d 504, 36 P. 2d 1078; delivery to the bank should be ample if properly declared as a trust in writing, or orally if the intention is clear, the possession of the trustee being that of the donee, provided that the gift is complete, irrevocable, and the deposit is placed under donee's exclusive dominion and control. See Stockgrowers & Ranchers Bank v. Milisich, 52 Nev. 178, 283 P. 913. It must show such delivery as placed the moneys under donee's exclusive dominion and control, an essential element of a gift inter vivos, Stockgrowers & Ranchers Bank v. Milisich, 52 Nev. 178, 184, 283 P. 913; 28 C. J. p. 630 et seq.; Simpson v. Harris, 21 Nev. 353, 31 P. 1009. Could plaintiff contend that the mere evidence of deposit on December 9, 1932, was such a delivery in trust or otherwise as invested plaintiff with exclusive dominion and control of the deposit, it might be of interest to know in whose possession the pass book was, between then and the 16th of December, when plaintiff signed the signature card authorizing withdrawals by deceased also, the court below might be justified in considering the book as being in the possession of deceased, account No. 6241 shows a deposit January 3, 1933, presumptively we think by deceased, and he undoubtedly had the pass book, unless there were duplicates which would not be presumed. The possession of the pass book at any time during the account's existence seems to us of some importance, as bearing on the question of dominion and control, and the intention of parties, a presumption that it remained in deceased,

plaintiff admitting no deposits and but one withdrawal and that when she was with deceased and the book available to her, during his lifetime, would not we think be subject to criticism. The letter dated December 12, 1932, referred to in the signature card plaintiff's exhibit No. 7, might have been helpful also, four days before plaintiff appears to have had anything to do with the account, might raise a presumption that it was written by deceased, and probably evidenced his intention. This evidence or lack of it, rather than evidencing a loss of dominion, control and right of revocation, seems persuasive of quite the opposite.

To constitute a valid gift inter vivos, the intention to make it must be satisfactorily established and this intention must have been executed by actual, constructive or symbolical delivery of the thing proposed to be given without power of revocation. In other words, there is no gift until the intention of giving is fully consummated by the donor transferring all right and dominion over the thing given to the donee, Tucker v. Tucker, 138 Iowa 344, 116 N. W. 119. If he intends to and does divest himself of dominion and control over the funds, the deposit is sufficient. In re Hall's Estate, 154 Cal. 527, 532, 98 P. 269. The validity of an attempted gift inter vivos by the deposit of money in a bank to the credit of another depends on the intention of the alleged donor, Industrial Trust Co. v. Scanlon, 26 R. I. 228, 58 A. 786, 3 Ann. Cas. 863. Recent cases being in accord with this holding, Boyle v. Dinsdale, 45 Utah 112, 143 P. 136, Ann. Cas. 1917E, 367. The intention of the depositor in respect to gift of money on deposit is controlling, McNabb v. Fisher, 38 Ariz. 288, 299 P. 679. We have no writing sufficiently evidencing an intention to or not to create a gift inter vivos, an intention therefore must be found from the facts and circumstance surrounding the transaction or transactions; by parole evidence in the way of statements made perhaps if any, or by presumption of intention, statutory or otherwise, from actual proven occurrences. We are asked, on the

meager evidence here, in effect, to sustain plaintiff's contention that deceased intended to completely divest himself of dominion and control of the fund, and immediately (not at any future time) vest this in plaintiff, without right of revocation, of necessity likewise intending, her acceptance, and that the deposit constituted delivery to her, without consideration; all of which are essential to a gift inter vivos, and all of which deceased must have intended, to sustain plaintiff's claim of gift. Such an intent is not apparent, neither is the intention to constitute this a joint tenancy account with right of survivorship. When a claim of gift is not asserted until after the alleged donor dies, clear and satisfactory evidence is required on every element for the sustaining of such claim, Jones v. Bank of San Jose, 82 Cal. App. 696, 256 P. 247, 248; Su Lee v. Peck, 49. Nev. 124, 240 P. 435. The retention in the donor of the right to withdraw the whole of the bank deposit is inconsistent with the idea of a gift, Jones v. Bank of San Jose, above. It is likewise as to his possession of the pass book. Idem. The case of Holman v. Deseret Savings Bank, supra, being decided on facts as ample, and comparable to the facts in this case, except for the lack of relationship between parties there, we adopt as our own the language there used in substance, as follows: "In many cases it is held that where money is placed on deposit in a saving bank by the owner thereof in the joint names of himself and another, *and he delivers the pass book* (italics ours) to such other, such a transaction in connection with other fact and circumstances *showing the intention of the owner to make a gift* (italics ours) may constitute a gift inter vivos, and it may also make the parties in whose names the deposit is made joint tenants, including the right of survivor to take the whole, citing cases, N. Y., R. I., Mich., and Dennin v. Hilton, N. J. Ch., 50 A. 600 'conceding that in all cases of joint deposits the controlling question always hinges upon whether the owner of the money intended to make a gift, or whether

the account was entered in joint form for other purposes, making clear that, unless the intention to make a gift is expressed in writing or is clearly inferable from the acts or declarations of the alleged donor, there may always be grave doubt. whether such transaction shall be considered a gift or a deposit for convenience.' * * * In all the cases cited above the essential element, namely, the joint ownership or that a gift was actually intended and executed for the purpose of creating a joint ownership, is either clearly established by the evidence or found as a fact by the trial court. In the case at bar counsel, however, assumed that the fact of joint ownership is established from the mere fact that the money in question was deposited in the names of both Mrs. Eslinger, the owner thereof, and Mrs. Holman, so that either could withdraw it either during the lifetime of both or *upon the death of one by the presentation of the pass book*. (Italics ours.) While the foregoing fact may be considered as affording some evidence of a gift and a joint ownership, yet standing alone, and especially when such ownership is denied, it is insufficient to establish either a gift or joint ownership. Naturally enough the cases are not in harmony as to what facts or circumstances are sufficient to establish joint ownership of a fund, especially where a deposit is made, as here, by the owner of the fund in the names of such owner and another. We have found no case,. however, where the facts to establish a gift or joint ownership were as meager as they are in the case at bar where either a gift or joint ownership was held to have been established. There are a number of cases, however, in which the facts and circumstances were much stronger in favor of a gift and joint ownership than they are in this case, and yet the courts have held as a matter of law that neither was established. Among the numerous cases we refer to the following: Robinson v. Mutual Sav. Bank, 7 Cal. App. 642, 95 P. 533; Harris Banking Co. v. Miller, 190 Mo. 640, 89 S. W. 629, 1 L. R. A.,

N. S., 790; Denigan v. Hibernia Savings & Loan Soc., 127 Cal. 137, 59 P. 389; Schneider v. Schneider, 122 App. Div. 774, 107 N. Y. S. 792; Basket v. Hassell, 107 U. S. 602, 2 S. Ct. 415, 27 L. Ed. 500; Dodge v. Lunt, 181 Mass. 320, 63 N. E. 891; Murray v. Cannon, Adm'rx, 41 Md. 466; Norway Sav. Bank v. Merriam, 88 Me. 146, 33 A. 840; Whalen v. Milholland, 89 Md. 199, 43 A. 45, 44 L. R. A. 208; In re Hall's Estate, 154 Cal. 527, 98 P. 269."

■ Nor would the fund so deposited subject to the withdrawal of both, with the intention that the sum remaining subsequent to the death of C. W. Perry go to plaintiff, be the subject matter of a gift inter vivos, the gift was not complete, not absolute or irrevocable. It would but constitute an attempted testamentary disposition of the fund, and invalid, the intention not being executed in the manner provided by law. Jonte v. English, 171 Okl. 291, 40 P. 2d 646, Turnbull v. Turnbull, 118 App. Div. 449, 103 N. Y. S. 499; Simpson v. Harris, 21 Nev. 353, 31 P. 1009.

We call attention to the decision of the lower court in the way of an inference or presumption in the case, wherein the court said, "The court cannot believe that the person who wrote exhibit 'A' had on deposit $6,110.82 on December 31st, 1936." Exhibit "A" dated January 5, 1936, but actually proven to have been written January 5, 1937, five days after the date referred to by the court, being as follows:

"Marion B. Earl Canon City Colo
June 18–1937 Jan 5–36
Dear Brother.

Received your letter always glad to hear from you, but am sorry I cant raise that money right now. We are going to ship some steers as soon as they get them all gathered and we are on a deal to sell that ranch we bought last year. we may get that thru soon and I will send it just as soon as possible. We never did beat any one and have no intentions of beating you. You told us

to use it and if we needed more you had more in the bank and we didn't mean to do any thing that wasn't all right. We haven't spent any thing foolishly and will pay you back as fast as we can of course the dry weather was hard on us not raising enough feed to take care of our cattle. and the depression and all. but we will come out all right with them yet. last year we could have got a government loan but this year they dont seem to be doing that: I guess they are spending it all on relief & w.p.a. Well I guess this is all for this time but we will do the best we can. We are having lots of flu around here and I see by the papers they have closed the schools in Denver & lots of places. Well I guess this is all as ever

Jen."

 We feel this to be a reasonable inference and deduction from the evidence and is considered as an added basis and reason underlying and supporting the findings, conclusions and decision. The first paragraph of finding No. III being responsive to the pleadings and the issues made and being sufficiently supported by evidence or insufficiency of evidence to support a finding to the contrary; the second paragraph thereof, though in effect being a finding of a fact not directly raised by the pleadings, if it stood alone, seems to us a finding of a probative fact following as a corollary, and supporting the ultimate fact found, that plaintiff did not have the money on deposit, in the amount alleged, or any amount. It does find at least some support, in evidence not at variance with the pleadings. The conclusions and decision being sufficiently supported by the first paragraph of this finding and other findings the deletion or inclusion of the second paragraph would not affect the final judgment. It could at most be a finding of an immaterial fact, and be treated as immaterial, not affecting the substantial rights of parties to this action. Having found the account did not belong to plaintiff, it could do no substantial harm to find it did belong to deceased, in

determining only whether plaintiff was entitled to recover as prayed, here. We feel doubtful of plaintiff's right of recovery under this cause of action in any event. Had the court found in the affirmative on plaintiff's pleadings, on her theory of a joint tenancy account, how could that sustain a judgment as prayed, for $2,392.15? She would of necessity be required to trace the identical joint tenancy funds to a specific fund or into specific property, by her pleadings and evidence, and her right of recovery would be limited to that property or moneys in that fund; under the theory that joint tenancy funds retain that character even after demise of one of the parties, in property acquired or traceable fund established. Under any other theory plaintiff here could have sued on her theory for all sums withdrawn by deceased from account No. 6241 with which we are here concerned.

Under plaintiff's third cause of action, finding No. IV, it is contended, is not supported by the evidence and is not responsive to the pleadings. The allegations of this cause are the same as the others except for paragraph 3, alleging in substance, that between March 23, 1936, and February 17, 1937, inclusive, deceased collected rents on property belonging to plaintiff, in a total sum of $493.50. The court found, it was not true that from on or about the 23d day of March, A. D. 1936, to on or about the 17th day of February, A. D. 1937, both dates inclusive, the said C. W. Perry collected rentals belonging to said plaintiff in the total sum of $493.50, or any other sum, but that any money deposited by said C. W. Perry in his own name was his own money. An analysis of the pleadings generally seems called for at this point, in relation hereto. Defendant's denials and averments, generally on information and belief denied the above. The answer and reply both as amended; alleged and denied, first, long-time ownership in deceased; denied and alleged in plaintiff. Second, conveyance without consideration in trust; denied, alleged purchased with plaintiff's money, not his. Third, up to death collected

money, paid taxes, treated as his own; admits but alleges him to be her agent and all moneys hers.

 This is purely an action for money had and received, and we are asked to reverse the case because the court failed to find for plaintiff in the exact language of paragraph 3, "That deceased collected rentals on property *belonging to plaintiff*, as per a requested finding." Had the court found as requested, we doubt that it would sustain a decision in plaintiff's favor. This is about as meager a statement of such a cause of action as we could conceive, nor does the statement in the amended reply, C. W. Perry, was acting only as the agent of and for this plaintiff, assist a great deal. We think that ultimate facts, not conclusions, should be alleged, from which the court could determine whether or not there was an agency, the nature of it, his commissions, whether collection was made for the use and benefit of plaintiff, whether his only duty was to remit to plaintiff, and if not the whole, then how much, and particularly that his only remaining duty was to remit the sum alleged. There is no allegation of indebtedness directly or indirectly. Pleadings should be such that findings thereon will support a final judgment in the affirmative or negative. The fact that the finding here that deceased didn't collect *rentals belonging to plaintiff*, seems an attempt to correct this defect by finding with reference to a substantial right, though not alleged, is not subject to criticism. By the evidence and reasonable inferences therefrom it appears, deceased for a long time and since 1926 when plaintiff claims she acquired the property involved, collected all rentals, paid taxes, made no remittance to plaintiff. The collection of the sum alleged is admitted by the pleadings and the only other evidence in this relation, seems to be a personal savings account of C. W. Perry, No. 10275, defendant's exhibit "J," the first and last dates of deposit therein corresponding with the inclusive dates alleged in paragraph 3 of complaint. There is no evidence of an agency as alleged, nor could the court be required to presume agency from the mere

fact of this deposit to deceased's personal account, and certainly could not on such a presumption be required to presume an obligation to pay to plaintiff all moneys deposited, a presumption must find support in fact whether it be statutory, conclusive or disputable, or otherwise. A court will not sustain a presumption on a presumption. The mere deposit of this money to a different account in no manner creates an inference that the money belonged to plaintiff any more than did any other previous rental received. Plaintiff's right of recovery we infer depended upon establishing that deceased had received or obtained possession of money belonging to her, which he in equity and good conscience was obligated to return, Kondas v. Washoe County Bank, 51 Nev. 134, 140, 271 P. 465. The issue of ownership of the property would, we think, not be controlling of the issues raised, and failure to find as to it, would affect no substantial right of plaintiff as to her third cause of action. The court by its decision and conclusion later having held that conveyance to plaintiff was a conveyance in form absolute, and not a conveyance in trust as alleged by defendant and adjudged that defendant take nothing, would we think answer the objection that the court had failed to find as to a material fact, no direct finding having been requested thereon. Under our practice, when findings are not made or requested, any findings necessary to support the judgment are presumed. Murray v. Osborne, 33 Nev. 267, 111 P. 31, 33. We think this finding responsive to the pleadings or to what they should have been to create an issue, and are sufficiently supported by evidence or failure thereof. If no prejudice to a substantial right be shown, and the judgment is right, though decided on a wrong ground, it will not be disturbed by the supreme court, Conley v. Chedic, 6 Nev. 222. The judgment of an inferior court will not be set aside on appeal, for errors which could not have prejudiced the appellant, Mitchell v. Bromberger, 2 Nev. 345, 90 Am. Dec. 550; Chiatovich v.

Davis, 17 Nev. 133, 28 P. 239; Brown v. Lillie, 6 Nev. 244; Schulz v. Sweeny, 19 Nev. 359, 11 P. 253, 3 Am. St. Rep. 888. Findings of the trial court which are supported by substantial evidence will be sustained, Seavy v. I. X. L. Laundry Co., 60 Nev. 324, 108 P. 2d 853; Bralis v. Flanges, 45 Nev. 178, 199 P. 475. The failure of plaintiff's evidence to support her contentions would certainly sustain a negative finding, if within the pleadings as it is here.

The court reserved until the conclusion of the case, its ruling as to admissibility of certain evidence by plaintiff as to transactions with the deceased during his lifetime, on objection by defendant, under sections 8966 and 8970, 1929 N. C. L., commonly known as the "dead man rule." Plaintiff claims prejudicial error in the court's failure to consider evidence given under the reserved ruling. "As to the payment of $1600 on an additional obligation of $1800.00 during the lifetime of deceased, deceased having waived payment of the $200.00 balance," on the ground that defendant had waived the dead man rule by introducing exhibit "A" above. Second, that defendant's cross-examination of plaintiff, though with the understanding that he did not waive his objections, constituted a waiver of the incompetency of the witness.

Exhibit "A" was introduced through Marion Earl, a disinterested witness, without objection, plaintiff later identifying the signature thereto as hers. Under sections of our statutes cited above in such cases, 8970, "The following persons cannot be witnesses * * *, as to any matter of fact occurring before the death of such deceased persons," 8966, "No person shall be allowed to testify * * * when the facts to be proven transpired before the death of such deceased person; provided, that, when such deceased person was represented in the transaction in question by an agent who is living, and who testifies as a witness in favor of the representative of such deceased persons, or, when persons other than

the parties to the transaction, claiming to have been present when the transaction took place, testify as witnesses in favor of the representative of such deceased person, in such case the other party may also testify in relation to such transaction," the question of waiver of incompetency not having been raised in the court below, following Vesey v. Benton, 13 Nev. 284; it seems to us the court was justified in rejecting the evidence of plaintiff. Marion Earl was not an agent of deceased nor did he testify as one claiming to have been present at the time of the transaction. Plaintiff being a party to the transaction and merely identifying her signature did not remove the incompetency, she could have identified the signature of deceased we believe, and could have testified she had conversations with deceased so long as she did not testify to the nature of the conversations. Nor would the introduction of exhibit "A" without objection, we think, constitute a waiver of incompetency opening the door to testimony by her, which only deceased could rebut. In Re Wilson's Estate, 56 Nev. 500, 56 P. 2d 1207, cited by plaintiff the court went no further than to hold that where appellant chose to have her own testimony, subject to being stricken under section 8966, remain, and expressly withdrew her objection to respondent's incompetency thereunder, she is not, therefore, in a position to urge upon this court any objection to the competency of respondent as a witness in the lower court. To extend the waiver as far as contended for by plaintiff here would be in effect to say that upon the introduction of a note signed by the witness he would be entitled to testify to lack or failure of consideration and payments made to deceased during his lifetime. This we think is further than Nevada courts could go under our statutory provisions. Exhibit "A" was and is not a narration of facts, as referred to in decisions cited by plaintiff, warranting a presumption of waiver of incompetency as to such narrated facts.

The defendant having reserved his objections while cross-examining plaintiff as to evidence received

under a reserved ruling, we think could in no manner constitute a waiver as contemplated in the various decisions in Nevada. Defendant under the circumstances here should have been entitled to cross-examine as to any material evidence admitted on direct, unless he developed or delved into new matter concerning transactions with deceased, tending to aid his, defendant's case.

 We fail to agree that the mention by counsel, in his examination of witnesses, of a joint account, binds him to the theory of a joint tenancy account. Throughout the trial and in the supreme court the theory of defendant seems to have been consistent, and that account No. 6241 was a deposit of deceased's money in the name of plaintiff, subject to the withdrawal of both during the life of both, not a joint tenancy with right of survivorship. We agree that a case should not be tried on one theory and appealed on an entirely different one. And one should not be allowed to appeal on one theory, and be entitled to a rehearing here on another, as pointed out in the cases cited by plaintiff. Neither do we think that a party should be bound by the mere nomenclature used by his or her counsel.

 As to the matter of the expression in the opinion of the court, with reference to an indebtedness of a sizable sum, the court having denied recovery to defendant on his cross-complaint for $11,000 not being able himself to determine the amount of the indebtedness; no harm appears to have been done any substantial right of plaintiff. As has been said heretofore, a court sitting without a jury should of right consider surrounding facts and circumstances and could express opinion as to probative facts as reasons for and supporting the ultimate facts found. There was testimony that Mr. Earl saw other letters, of the same tenor as exhibit "A" referring to a sizable sum, as late as the day of the death of deceased he referred to substantial amount or sizable sum by inference at least in discussing chicken ranches and bonds. This seems to be a situation in

which the evidence is in conflict and the court will go no further than to say there is substantial evidence to support such an opinion, and the judgment should not, therefore, be disturbed.

 The judgment appearing to be a correct one, every inference and presumption should be indulged in favor of the regularity of all proceedings and sufficiency of findings to support the judgment.

The portions of the judgment appealed from, and the order denying a new trial, are affirmed.